## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## SOUTHERN RAILWAY COMPANY v. FRANKLIN & PITTSYLVANIA RAILROAD COMPANY.

### FEBRUARY 2, 1899.

1. CONTRACTS—*Implied Covenants—Case in Judgment—Railroads—Lease.*— Although courts are careful in inferring covenants and promises not contained in written contracts, yet what is necessarily implied is as much a part of the instrument as if plainly expressed, and will be enforced as such. If the language of the instrument leaves the meaning of the parties in doubt, the court will take into consideration the occasion which gave rise to it, the obvious design of the parties, and the object to be attained, as well as the language of the instrument itself, and give effect to that construction which will effectuate the real intent and meaning of the parties. In the case in judgment, it is manifest that the intention of the parties was that the railroad leased by the appellee should be maintained and operated by the lessee during the entire term of the lease, and, under the evidence in this cause, the appellant is as much bound by the covenants, expressed or implied, of the lease as if it had been an original party thereto.

2. CONTRACTS—*Implied Covenants—Adding to Written Contracts.*—A necessary inference from a written contract of an obligation to do what the parties actually intended, and what is essential to give effect and validity to it, is not an addition to the contract.

3. INJUNCTIONS—*Railroads—Lease—Inadequate Remedy at Law.*—An injunction will lie to prevent the lessee of a railroad from ceasing to operate it during the lease when his contract compels him to maintain and operate the road during the whole term of the lease. The remedy at law to recover damages for the breach of the contract is neither complete nor adequate.

4. SPECIFIC PERFORMANCE—*Railroads—Operating Leased Road.*—Equity will compel a railroad company to specifically perform its contract to maintain and operate a leased road, although the lease has some years to run, and the maintenance and operation of the road requires continuous acts involving the exercise of skill and judgment.

5. Specific Performance—*Hardship.*—A court of equity will not refuse the specific performance of a contract on the sole ground of hardship where it appears that the contract, in its inception, was fairly and justly made, and that the hardship is the result of miscalculation, or is caused by subsequent events, or a change of circumstances, and the party seeking performance is wholly without fault.

6. Specific Performance—*Railroads—Operating Leased Road—Branch Roads.*—Where a railroad company may be properly compelled to maintain and operate a leased road, and it is plainly implied in the lease that a branch road of the lessee was to be operated in conjunction with the leased road so as to reach the main line of the lessee, it is not error, in a suit, to compel the company to maintain and operate the leased road, to require it to maintain and operate the branch road also, during the term of the lease.

7. Chancery Practice—*Specific Performance—Railroads—Continuing Case on Docket.*—A suit to compel a railroad company to maintain and operate a railroad which it has leased should be continued on the docket during the term of the lease so as to enable the court to make such additional orders from time to time as circumstances may require.

Appeal from a decree of the Circuit Court of Franklin county pronounced October 21, 1897, in a suit in chancery wherein the appellee was the complainant, and the appellant was the defendant.

*Affirmed.*

The opinion states the case.

*Blackford, Horsley & Blackford,* and *Eppa Hunton, Jr.,* for the appellant.

*Phlegar & Johnson,* for the appellee.

Riely, J., delivered the opinion of the court.

The Franklin and Pittsylvania Railroad Company (hereinafter called the Franklin Company) was incorporated by an act of the General Assembly of Virginia, of March 12, 1878, and authorized to construct a railroad "from some point on the main line of the Washington City, Virginia Midland, and Great

Southern Railroad Company (hereinafter called the Midland Company), or any branch thereof, in the county of Pittsylvania, to Rocky Mount," the county seat of Franklin county.

On September 19, 1878, it made a lease of its road, to take effect when the same was completed, to John S. Barbour, Receiver, in the chancery suit of *Graham* v. *Washington City, Virginia Midland, and Great Southern Railroad Company*, pending in the Circuit Court of the city of Alexandria, for the term of thirty-four years, at the annual rental of $7,000. The lease was made subject to the ratification of the stockholders of the Franklin Company, and the approval and confirmation of the said court. It was duly ratified by the former, and approved and confirmed by the latter. The road was constructed and equipped by the lessor, and delivered to the lessee on April 15, 1880, from which date the lease was to run for thirty-four years.

The Southern Railway Company having, on June 18, 1894, duly acquired by purchase and conveyance the road owned by the Midland Company when the lease was made, and along with it the lease to Barbour, Receiver, by the Franklin Company, plainly manifested an intention, in the summer of 1897, to abandon and cease to operate the leased road. In anticipation of such action by the Southern Railway Company, and to prevent the consequences that would result from it, the Franklin Company brought its suit in equity in the Circuit Court of Franklin county, charging in its bill that the Southern Railway Company intended to abandon and cease to operate under the lease the road of the complainant after July 1, 1897, and asking that it be enjoined and restrained from doing so. The Southern Railway Company filed its answer to the bill, and admitted the charge of the complainant.

Is the defendant company bound to operate the leased road during the term of the lease, or may it rightfully abandon and cease to operate it? This is the first question presented for our determination. Its solution depends upon the provisions of the lease.

It is conceded that an express covenant to operate the road during the term of the lease is not to be found among the provisions thereof, but the complainant in the court below, which is the appellee here, contends that the obligation to operate the road throughout the entire term of the lease is so plainly contemplated by its provisions that the law will enforce it as an implied covenant, as fully as if the obligation were expressed in appropriate words.

Necessary implication is beyond doubt as much a part of an instrument as if that which is so implied was plainly expressed. "Although the words of a contract under seal," says Addison in his Treatise on Contracts (3 Vol., sec. 1400), " do not in themselves import any express covenant, yet the law, in order to promote good faith, and make men act up to the spirit as well as the letter of their engagements, will create and supply, as a necessary result and consequence of the contract, certain covenants and obligations, which bind the parties as forcibly and effectually as if they had been expressed in the strongest and most explicit terms in the deed itself."

While this is very true, courts are, nevertheless, justly prudent and careful in inferring covenants or promises, lest they make the contract speak where it was intended to be silent, or make it speak contrary to what, as may be gathered from the whole terms and tenor of the contract, was the intention of the parties. If, however, it can be plainly seen, from all the provisions of the instrument taken together, that the obligation in question was within the contemplation of the parties when making their contract, or is necessary to carry their intention into effect, in other words, if it be a necessary implication from the provisions of the instrument, the law will imply the obligation and enforce it.

Before proceeding to examine critically the provisions of the lease, it is proper to observe that a court, in construing an agreement whose language leaves in doubt its meaning as to the particular matter in controversy, in order to ascertain the

Opinion.

intention of the parties, should have regard to the occasion which gave rise to the contract, the obvious design of the parties, and the object to be attained, as well as to the language of the instrument itself; and give the agreement that construction which will effectuate the real intent and meaning of the parties as thus ascertained from the entire instrument, and by reference to the circumstances attending the making of it.

It is apparent that a principal object of the incorporators of the Franklin Company was to furnish railroad facilities to the citizens of Franklin county, which were without them, by connecting by rail Rocky Mount, the county seat, with the main line of the Midland Company, and thereby secure railroad communication with all sections of the State and country reached by that road and its connections. It was to this end that the county of Franklin subscribed to and paid for in its bonds $200,000 of the capital stock of the Franklin Company. And the consummation of this object was the main inducement on the part of the Franklin Company to enter into the lease with the Midland Company; while the inducement to enter into it on the part of John S. Barbour, Receiver, was, as expressed in his reports to the Circuit Court of Alexandria, to obtain, as he believed, a valuable feeder to his line of railroad. That the lease was in the contemplation of the parties thereto, at the time the Franklin Company obtained its charter, is shown by the eighth section thereof, whereby it is expressly made " lawful for said company to lease its road, or any part thereof, to the Washington City, Virginia Midland and Great Southern Railroad Company, or any other railroad company chartered by the Commonwealth."

It is apparent, upon a fair construction of the whole instrument, considered in the light of the circumstances under which it was made, that it was within the contemplation of the parties, and their intention, that the road should be maintained and operated during the entire term of the lease. And when

we come to examine its provisions critically, the obligation to do so, though not expressed in words, is plainly implied.

By the lease, the Franklin Company demised to John S. Barbour, Receiver, its whole road from Rocky Mount to Pittsville, in Pittsylvania county, together with all its stations, water tanks, switches, sidings, privileges, franchises, and other appurtenances, including an equipment of rolling stock not to exceed in value $20,000, for thirty-four years; said term not to commence until the Franklin Company had completed and delivered the road to the Receiver, and supplied the same with such amount of rolling stock and other equipment as might be necessary to its use and enjoyment, provided said equipment should not exceed in cost the sum of $20,000. And the Receiver, in consideration of the said demise, agreed to pay to the Franklin Company an annual rental during the term of thirty-four years of a sum equal to seven *per centum* upon the amount of certain bonds which the Franklin Company proposed to issue and secure by mortgage upon its road, privileges, and franchises, not to exceed $100,000. He further covenanted to apply the receipts which might be derived from the property thereby demised as follows: .

First. To the payment of the annual expenses of running the road and keeping it and the equipment in proper repair.

Second. To reimburse himself for the payment of the annual rent which he had agreed to pay for the use of the road.

Third. To the payment of a dividend of seven *per centum* upon the capital stock of the company, provided the capital stock should not exceed in par value the sum of $200,000.

Fourth. The residue of said receipts, if any, after making the said payments, should be retained by the Receiver for the use and benefit of the trust in his hands under the order of the court.

He still further covenanted to return the road at the end of the term of thirty-four years in as good repair as when he received it, and to return rolling stock and equipment equal in value to that which he received.

In the preamble to the lease, there is also the declaration that the Franklin Company, when completed, " will be a valuable feeder to the traffic of the main line " of the Midland railroad.

The leased road could not be a " feeder," valuable or otherwise, to the traffic of the main line of the lessee, unless it was operated.

Neither would there be *annual* expenses of *running* the road, and of keeping it and the equipment in repair, nor *receipts* to pay them, unless the road was operated.

One of the obligations of the Franklin Company, as we have seen, was to furnish rolling stock and other equipment necessary to the " use and enjoyment" of the road, not to exceed a fixed amount. The obligation to furnish the rolling stock and equipment for the *use* and *enjoyment* of the road implied the corresponding obligation to use it, and to use it was to operate the road.

By the terms of the lease the Receiver was to reimburse himself for the annual rental out of the receipts arising from the operation of the road, and provision was also made for the payment out of the receipts of a dividend to the stockholders.

The stipulations referred to plainly manifest an undertaking by the lessee to operate the road, and are inconsistent with the theory that it might, at its will and pleasure, abandon the road and cease to operate it. And that such was not the understanding of the lessee and his successors is unmistakably shown by their conduct, for, although the road has been unremunerative from the first, and an increasing burden to the lessee and his successors, both he and they recognized the duty to maintain and operate it, without raising a question, so far as the record discloses, as to their obligation to do so, as did also the appellant until shortly before this suit was instituted and the injunction awarded to prevent its abandonment of the road, covering altogether a period of upwards of seventeen years.

By the general statute law of the State in force when the lease was made, an abandonment by a railroad company of its road, or a failure to use and keep it in good repair for three successive years, rendered the company liable to a forfeiture of its charter and of its property. The parties to the lease are presumed to have known the law, and it cannot be doubted that they were fully cognizant of it. It is inconceivable that the Franklin Company would have entered into a lease of its road which would permit its abandonment by the lessee with the consequent liability to a forfeiture of its franchises and property; and such a lease would be no less incompatible with the express covenant of the lessee to return the road in as good condition as he received it, and rolling stock and equipment equal in value to that which he received.

It was asked in argument by counsel for the appellant, if it could be imagined that the Circuit Court of the city of Alexandria would have approved and ratified the lease, if it bound the lessee to operate the road continuously during the whole term, even at a loss to the property then under its care? It may be asked in reply, would the court have sanctioned the lease, which bound the lessee to pay an annual rent of $7,000 for thirty-four years, out of moneys derived from the property then under its care, if the road might not be used, but could be abandoned at the will and pleasure of the lessee (for it is conceded that by the terms of the lease the rent must be paid during the whole term whether the road be operated or not)? Clearly not.

Our conclusion is that the obligation to maintain and operate the road during the term of the lease is a necessary implication from its expressed stipulations. It adds nothing to the written contract to infer an obligation to do what was actually intended by the parties, and what is essential to give effect and vitality to it.

This conclusion is in nowise inconsistent with the case of *Sherwood* v. *A. & D. R. Co.*, 94 Va. 291, where this court

refused to compel the railroad company to replace its tracks from its existing terminus to its former terminal station in the city of Portsmouth, and to re-establish that point as the terminal station of its line. That case, which was much relied upon by counsel for the appellant, furnishes no ground for the contention that the appellant may abandon at its will the use of the appellee's road.

In that case the contract sought to be enforced was made subsequent to the mortgage under which the road was sold and acquired by the defendant company. It was held that the contract, being subsequent to the mortgage, was abrogated by the sale, and that the purchaser took the property free and discharged from all the obligations of the contract.

It was further held in that case that, the original company having the right under its charter to fix its deep water terminus at either one of two points, and having built its road to one of those points and selected that as its terminus, it was not obliged by its charter to maintain any other terminus, or compelled by the general law to keep up a branch road that it had constructed to connect with its main line. So that neither by charter, nor by contractual obligation, was the defendant company obliged to make its terminal station in the city of Portsmouth.

But how different is the case at bar. By the lease there is the obligation by contract upon the lessee to use and operate the road during the term of the lease. It is true that the obligation is only implied, but it is nevertheless as operative as if it were expressed. The lease, from which the obligation proceeds, has never been in anywise abrogated, but in all the mutations of the properties of the lessee, it has been expressly preserved with all the duties and obligations arising under it.

In *Sherwood* v. *A. & D. R. Co.*, *supra*, the distinction was clearly drawn between the positive duties imposed by charter, and those assumed by a corporation under permissive grants of power. As to the former, it was said that the court would compel their performance by appropriate remedies, while with

respect to the latter, it would enforce them or withhold its hands, as might seem just upon a consideration of all the circumstances of the case.

In the case at bar, there is the obligation by contract upon the lessee to maintain and operate the leased road. The obligation is in full force, and as binding as if it were a positive duty imposed by charter. The case is clearly distinguishable in principle from that of *Sherwood* v. *A. & D. R. Co.*

The lessee being bound by the provisions of the lease to maintain and operate the road of the lessor, the next question for determination is whether there is any binding obligation on the appellant to do so.

In the decree of the Circuit Court of the city of Alexandria of September 25, 1878, by which the court approved and ratified the lease, is contained the following provision in relation to it: "And for the purpose of establishing the rights of all parties claiming under this contract, it is hereby declared that in any order hereafter to be made in this cause providing for a sale of the road or a reorganization of the defendant corporation, said contract shall be duly respected, and all rights acquired thereunder duly protected."

In the 37th section of the decree entered by the court February 13, 1880, for the sale of the property of the defendant corporation (the Midland Company), the lease from the Franklin Company was expressly included; and in the 48th section of the decree it was provided that "the purchaser must take the property, rights, franchises, and works sold under this decree by said commissioner, subject to the leases and contracts specially named in said 37th section of this decree, * * * and the said purchaser must, as to said contracts and leases, take the place of the said company or of said receiver, as the case may be, and assume any and all liability and obligations thereunder." In the deed made, in pursuance of the sale, to the purchasers, who adopted as their corporate name "The Virginia Midland Railway Company," the lease from the

Franklin Company was expressly conveyed, and the foregoing provision in the 48th section of the decree of sale duly incorporated.

The new corporation, on April 15, 1886, demised all of its property, including expressly the lease from the Franklin Company, to the Richmond and Danville Railroad Company, for a term of ninety-nine years; and by deed of October 22, 1886, the latter company conveyed much, if not all, of the said property, including the lease from the Franklin Company, to the Central Trust Company of New York, trustee, to secure certain bonds issued by the Richmond and Danville Railroad Company. This deed was foreclosed by decree of the Circuit Court of the United States for the Eastern District of Virginia entered on April 13, 1894, in the consolidated causes of *Central Trust Company of New York, Trustee,* v. *The Richmond and Danville Railroad Company* and *William P. Clyde and others* v. *the Same & Others,* and the property conveyed by the said deed, including the lease from the Franklin Company, was bought by certain persons, who assumed and adopted the corporate name of " Southern Railway Company." A conveyance was duly made of the property on June 18, 1894, to the said company by masters appointed for that purpose by decree entered in the said causes. It thereby acquired, and, by the express terms of the conveyance, assumed and adopted, the lease of the Franklin Company, and thereby became liable for the fulfillment of all the obligations of the original lessee. It, therefore, plainly appears that the Southern Railway Company stands in the shoes of Barbour, Receiver, as respects the said lease, and is as firmly bound by its covenants, expressed or implied, as if it had been the original party thereto instead of the said Receiver.

Having ascertained from the provisions of the lease under construction that the lessee, Barbour, Receiver, was bound to operate the road of the lessor during the term of the lease, and being also of opinion that the appellant company is likewise

bound by the said obligation in all its force and vigor, it remains to be determined whether a court of equity will enforce the obligation.

It was earnestly contended by counsel for the appellant that conceding such obligation to exist, the remedy of the appellee was a suit at law for damages for the breach thereof, and that equity was without jurisdiction in the case. As a general rule, the remedy for the breach of a contract, especially where it does not relate to real estate, is a suit at law for compensation in damages, but if the remedy be not adequate, full, and complete, equity will interpose and compel the specific performance of the contract. The true rule is thus laid down in Story's Equity J., sec. 33: "The remedy must be plain; for if it be doubtful and obscure at law, equity will assert a jurisdiction. It must be adequate; for if at law it fall short of what the party is entitled to, that founds a jurisdiction in equity. And it must be complete; that is, it must attain the full end and justice of the case. It must reach the whole mischief, and secure the whole right of the party in a perfect manner, at the present time, and in future; otherwise, equity will interfere and give such relief and aid as the exigency of the particular case may require." See also *Stuart* v. *Pennis*, 91 Va. 688.

It cannot be reasonably contended that a suit at law would afford redress for the threatened injury. Only half of the term of the lease has expired. It has seventeen years still to run. It would be impossible to ascertain the amount of damage that the complainant would sustain from an abandonment of the road during the remainder of the lease. The injury from loss of traffic, from the natural and certain decay of buildings and structures, and from the possible, if not probable, forfeiture of its franchises and property, could not be estimated nor compensated by damages. The right of the complainant to have the road operated by the defendant until the expiration of the lease is a continuing right, and if the injury were reparable in damages, it would require a multiplicity of actions for the daily

breach of the agreement.    The remedy at law would be neither complete nor adequate.    Nothing short of the interposition of a court of equity would meet the exigencies of the situation, and secure the complainant the protection of its rights.

It was objected that, conceding the remedy at law to be inadequate, equity will nevertheless not compel specific performance of a contract having some years to run, which is practically what is sought by the mandatory injunction, that requires continuous acts involving the exercise of skill and judgment. It may be admitted that the authorities are not uniform, and that there are decisions which sustain the objection, but an examination of the decided cases will disclose the fact that the great weight of authority, and especially the recent decisions of courts of the highest respectability and influence, maintain the jurisdiction of equity in a case like that at bar.    The courts are constantly called upon to exercise the very jurisdiction here called in question in operating railroads through receivers. No particular difficulty is encountered in doing so, although the operation of the road in such case requires a continuous series of acts, involving the exercise of skill and judgment; and if the court can do this through its receiver, no good reason is perceived why it may not compel a railroad company to operate a road in performance of its contract to do so.

In *Joy* v. *St. Louis*, 138 U. S. 1, the St. Louis, Kansas City and Colorado Railroad Company claimed that it was entitled by succession under a certain contract to use jointly with the Wabash, St. Louis and Pacific Railway Company that portion of the tracks of the latter company which extends from a point on the northern line of Forest Park through the park and thence to the Union depot in the city of St. Louis, together with the right to use side tracks, switches, turnouts, and other terminal facilities.    It was a continuing right, and unlimited in time.    The contract contained provisions regulating the running of trains, and prescribing the duties of superintendents, trainmasters, and other officers.    The claim being denied, and

the right to use the tracks refused, the court, in a suit brought to enforce the same, decreed the specific performance of the contract, and enjoined the Wabash Company from refusing to permit the Colorado Company to use its tracks.

In *Franklin Tel. Co.* v. *Harrison*, 145 U. S. 459, the Telegraph Company had entered into a contract with Harrison Brothers, by which it agreed to allow them the right to put up, at their own expense, maintain, and use, a telegraph wire on its poles between Philadelphia and New York, which, when put up, was to be maintained and kept in good working order at the expense of the Telegraph Company, and over which Harrison Brothers were to be allowed to transmit messages free of all charge. At the expiration of ten years the wire was to become the property of the Telegraph Company, after which time it was to lease the same to Harrison Brothers for $600 *per annum*, and upon the same terms in all other respects as if the wire had not been given up. The ten years having expired, Harrison Brothers continued to use the wire as before, but paying the stipulated sum of $600 *per annum*. After this had gone on for about three years, the Telegraph Company gave notice to Harrison Brothers of its intention to terminate the agreement. The court held that the contract was one proper for specific performance, and enjoined the Telegraph Company from terminating the agreement, and required it to maintain the wire in good working order for Harrison Brothers.

In *Prospect Park & Coney Island R. Co.* v. *Coney Island & Brooklyn R. Co.*, 144 N. Y. 152, it appears that the plaintiff owned a steam railroad, which extended from Coney Island to a depot at the corner of Ninth avenue and Twentieth street, in the city of Brooklyn, and also owned certain horse-car railroads, extending from the depot to Fulton ferry, and that the defendant operated certain horse-car lines from Fulton and other ferries to Fifteenth street, and thence to Coney Island. A contract was entered into between them by which the plaintiff granted to the defendant the right to use the tracks of its

horse-car line on Ninth avenue from Fifteenth street to the depot, at Ninth avenue and Twentieth street, free of charge, for twenty-one years from June 1, 1882; and the defendant covenanted to run cars to the plaintiff's depot to connect with its trains run to and from Coney Island.   The contract contained a provision that, in case the defendant should use steam as a motive power on its line between the city and the island, either party could terminate the contract on six months' notice. They acted under the contract until October, 1889, when defendant, having adopted the "trolley system" of running cars by electricity upon its road between the city and the island, ceased to run its cars to the plaintiff's depot, and advised the plaintiff of its intention not to do so.   Upon a bill filed by the plaintiff to compel specific performance of the contract, the court so decreed.

In *Union Pacific R'y Co.* v. *Chicago, &c. R'y Co.*, 163 U. S. 564, a contract between certain railroads for trackage arrangement in all its details, for a period of 999 years, was decreed to be specifically performed upon the refusal of the party, which had contracted for the use of its tracks, to abide by the agreement, and the recalcitrant company enjoined from interposing any obstacle to the enjoyment by the other party of the rights and privileges secured to it under the contract.

The case of *Schmidt* v. *L. & N. R. Co.* (Ky.), reported in 38 L. R. A. 809, is very similar in its principal features to the case before us.   The Northern Division of the Cumberland and Ohio Railroad Company leased its roadbed, right of way, and other property to the Louisville, Cincinnati and Lexington Railway Company for the period of thirty years.   The Louisville and Nashville Railroad Company purchased the entire property of the lessee, including the said lease; took possession of the demised road; and, after operating it for a considerable period, gave notice of its intention to abandon the operation of the road.   Suit was thereupon instituted to enjoin it from doing so, and to compel the performance by it of the lease.

The lessor was required by its charter to operate the road, but the defendant contended that no duty rested upon it except such as was imposed by the lease itself, and denied that the duty to operate the road was so imposed. The court held that as assignee of the lease it assumed all the obligations thereof, and that it being the statutory duty of the lessor to operate the road, and the lessor having agreed that the lessee should operate it for the term of thirty years, the defendant was obliged, under the agreement, to do so.

In all of the cases above referred to, or in nearly all of them, the same contention was made as is now made here, that a court of equity will not specifically enforce a contract that calls for continuous service involving the exercise of skill and judgment, and requires constant supervision on the part of the court, but it was overruled, and specific performance decreed. Cases might be multiplied illustrating the maintenance of jurisdiction by courts of equity in cases like that at bar, but it is deemed unnecessary.

The enforcement of the contract is also objected to on the ground of hardship. It is not pretended that the lease was induced by fraud or false representations of facts. On the contrary, it was entered into after due deliberation, was reasonable and fair when made, and, as declared in the preamble, "deemed judicious and beneficial" to both parties. Operation under it has demonstrated that the Franklin Company, instead of becoming "a valuable feeder" to the main line of the lessee, has proved to be an unprofitable adjunct. The hardship is due in the main to miscalculation in making the contract, and in part to subsequent events and a change of circumstances in nowise attributable to the lessor.

It is not doubted that there are adjudged cases which hold that a court of equity will not decree specific performance of the agreement, where it would entail great hardship, and the hardship was due, in some measure at least, to the conduct of the other party. *Booten* v. *Scheffer*, 21 Gratt. 474; *Gish* v. *Jamison*, *ante* p. 312; and *Willard* v. *Tayloe*, 8 Wall. 564.

But we question whether a court of equity ever refuses specific performance upon the sole objection of hardship, where the contract, in its inception, was fairly and justly made, and the hardship is the result of miscalculation, or is caused by subsequent events or a change of circumstances, and the party seeking performance is wholly without fault. In *Marble Company* v. *Ripley*, 10 Wall. 356, Mr. Justice Strong, in speaking of contracts that were supposed to be fair and equal when made, but in the lapse of time have become bad bargains, said: "Besides, it is by no means clear that a court of equity will refuse to decree the specific performance of a contract, fair when it was made, but which has become a hard one by the force of subsequent circumstances and changing events." The element of risk enters more or less into every contract, and the obligation to perform it cannot be allowed to depend upon the question whether it has proved to be advantageous or disadvantageous. It would be a travesty upon justice, and the reputed sanctity of contracts would be of little avail, if parties could refuse the performance of contracts having some years to run, which were fairly entered into, and believed to be just and equal when made, merely because from contingencies, whose possibility might have been foreseen, they had turned out, in the course of execution, to be a losing instead of a profitable bargain.

In *Schmidt* v. *L. & N. R. Co.*, *supra*, it appeared that the lessor was largely indebted to the defendant company, the assignee of the lease, for moneys furnished for it under the contract of lease, and to be repaid by it; that judgment had been recovered for the amount, and an effort made to sell the leased road to pay it, but nothing could be made because no one would give anything for the road subject to the mortgage subsisting upon it. It also appeared that the leased road was being run at a heavy loss, the necessary cost of operating having exceeded the receipts in the sum of $199,411.70. The defendant claimed that it would be harsh and inequitable,

under these circumstances, to require it to continue to operate the road, but the court held that the facts in the case were not such as to release the defendant from performing the contract. Nor can the objection of hardship, made in the case before us, avail to stay the hands of the court.

Objection is made to the decree appealed from that it enjoins the appellant from abandoning or ceasing to operate the road as it was then operating it, without regard to the exigencies of the case. The decree simply requires the same train service as the appellant had deemed to be proper and necessary during the three years it had been in control and operation of the road. It is to be presumed that it was then running only such trains, and with such cars, as its experience showed was required. This would seem to be reasonable and proper, and to furnish no good ground of complaint.

The further objection is made to the decree that it requires the appellant to operate the entire line from Rocky Mount to Franklin Junction, which includes seven miles not belonging to the appellee, but is the property of the appellant. This seven miles is a branch road of the Midland Company running out from its main line to a place called Pittsville; was in existence when the lease was made; and the provisions of the lease clearly show that it was the understanding and agreement of the parties thereto that the Franklin Company was to construct its road to the western terminus of the branch road, so as to obtain connection with the main line. Without the branch road, there would be no connection between the new road and the main line. It was by means of the branch road that the new road was to become "a valuable feeder to the traffic of the main line." It is plainly implied in the lease that the branch road was to be operated in conjunction with the new road. The two have been operated together as one line ever since the beginning of the lease. They were so operated by the original lessee and all of his successors, and were being so operated by the appellant when this controversy

arose.   The branch road is essential to the use and enjoyment of the road of the Franklin Company, and the court committed no error in the respect complained of.

We find no error in the decree appealed from except in dismissing the case from the docket.   The court should have reserved the right to make additional orders from time to time as circumstances might require and kept the case on the docket for that purpose.   The decree will be amended in this respect, and, as so amended, will be affirmed.

KEITH, P., dissents.

*Amended and Affirmed.*