**G. T. FOGLE & CO. v. UNITED STATES.**
No. 5025.

Circuit Court of Appeals, Fourth Circuit.
April 20, 1943.

Henry S. Cato, of Charleston, W. Va., for appellant.

Chadwick W. Ketchum, Asst. U. S. Atty., of Huntington, W. Va. (Lemuel R. Via, U. S. Atty., of Huntington, W. Va., and Charles M. Love, Jr., Asst. U. S. Atty., of Charleston, W. Va., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

G. T. Fogle & Company (hereinafter called Fogle) instituted a civil action under the Tucker Act, 28 U.S.C.A. § 41(20), against the United States of America (hereinafter called the Government) in the United States District Court for the Southern District of West Virginia, seeking the recovery of damages for an alleged breach by the Government of three separate contracts entered into between Fogle and the Government for the rental of street and road construction equipment. The District Court rendered judgment for the Government and Fogle has duly taken an appeal to this Court.

The facts of the case are undisputed and all of the evidence in the case is documentary. The three contracts sued upon, designated as Claims No. 1, No. 2, and No. 3, respectively, were rental agreements for the use by the Government of a concrete mixer, a gasoline shovel, and another concrete mixer. Fogle contracted to furnish this equipment to the W. P. A., pursuant to the terms of the three separate written contracts.

Each of these contracts was executed on United States Revised Standard Form No. 33, on the reverse side of which certain instructions and conditions were printed. To this Form No. 33, in Claims No. 1 and No. 2, Form S. P. O. No. 7 was attached and expressly made a part of the contract between the parties. In the case of Claim No. 3, Form S. P. O. No. 7 was inadvertently omitted but Fogle has waived this oversight, so we may regard Form S. P. O. No. 7 as having been properly attached to this third contract. The material terms of Form S. P. O. No. 7 bearing on a proper construction of the contracts are as follows:

"Each bidder, by submitting a bid for the rental of equipment, agrees to the following terms and conditions:

"1. Without additional cost to the Government, to furnish transportation of all equipment to and from the point of operation, and to furnish fuel, grease, oil and operator or operators therefor, except as otherwise specified in the invitation for bids. .

"2. That by submission of its bid the bidder has guaranteed and does guarantee that all equipment furnished is in first class condition * * *.

"5. *All bidders must agree to the rental period specified in the invitation for bids, but the rate agreed upon shall apply to actual operating time only. Payment will be made only for such actual operating time, as determined by the proper administrative officer.*

"6. If the work in connection with which the equipment is to be used is not completed at the expiration of the rental period, the Government shall have the option to extend such period for thirty (30) days, or any part thereof, at the rental rate agreed upon.

"7. The bidder shall bear all expenses incident to the maintenance and repair of all equipment rented, and for depreciation or wear and tear resulting from the operation thereof.

"8. When first ordered by the supervisor on the job, any item * * * of equipment shall be delivered to the location designated in such order within three (3) days from the date thereof. All equipment shall thereafter remain available for use on the job for the full rental period, * * *.

"9. The supervisor on the job shall inspect all equipment when delivered. If any item so delivered does not comply with the requirements of the invitation for bids * * * it may be rejected by the supervisor on the job, and it shall be the duty of the bidder to furnish a satisfactory substitute therefor.

"10. In case of default of the contractor, the Government may procure any or all items of equipment called for by the contract from other sources, and the contractor shall be responsible for any excess cost occasioned thereby.

"12. This agreement shall be attached to U. S. Standard Form 33 (Revised), and the terms and conditions agreed upon shall be in addition to the conditions therein provided, which shall likewise apply so far as applicable." (Italics ours.)

We shall now discuss in detail the provisions of the individual contracts.

Claim No. 1. This contract provided for the rental of a concrete mixer to the Government for 100 hours at 75 cents per hour, and required Fogle to furnish transportation for the mixer, at its own expense, to and from the point of operation. The mixer was promptly delivered by Fogle at the place specified in the contract and the project foreman acknowledged receipt of the mixer in good condition. Although Fogle admits that the mixer was never actually used by the Government, it nevertheless claims it is entitled, as damages for the alleged breach of contract by the Government in failing to use the mixer, to the sum of 300 dollars (the fair rental value of the mixer at 75 dollars per month for the 4 months' period during which the mixer was left on the site of the project).

Claim No. 2. This contract called for the rental of a ⅝ c. y. gasoline shovel with caterpillar traction for a period of 3 months, at a rental of 400 dollars per month. Fogle agreed to pay the wages of an operator and maintain the shovel in

good repair. Here again the Government admits proper delivery of the equipment in working condition at the site of the project, and Fogle concedes that the Government at no time made use of the shovel. Fogle, however, claims damages for the alleged breach of this contract by the Government in the sum of $549.03, which amount represents the net profit Fogle would have made on the contract if the Government had operated the shovel in accordance with the contract.

Claim No. 3. This contract was for the rental of a concrete mixer at $84.00 per month. Fogle duly delivered this mixer on the project, but it was neither accepted nor used by the Government for the reason that the project had already been completed. Fogle now seeks damages for the alleged breach of this contract by the Government in the sum of $9.18. This amount represents the cost of transporting the mixer to the side of the project.

█ Since the same legal principles apply to each of the contracts, we shall group them together in our treatment of the case. We have no quarrel with Fogle's general statement of the law that a contract must be read as a whole, with effect given to each provision thereof in order to arrive at the true intention of the parties. While Fogle concedes the absence on the part of the Government of an express agreement to use the equipment furnished, we are urged to read into the contracts an *implied* promise by the Government to operate the shovel and mixers. Thus, Fogle emphasizes the fact that it was obliged to deliver this equipment on the project and to maintain the equipment in good condition, all at its own expense. Why, asks Fogle, would it assume these obligations unless the Government was correspondingly bound to make use of the equipment furnished it?

In support of this proposition, our attention is called to the case of Southern Ry. Co. v. Franklin, 1899, 96 Va. 693, 32 S.E. 485, 44 L.R.A. 297. Here a railroad leased its property to the receiver of another road for a term of 34 years. Nine years later, the lessee manifested its intention to abandon the leased road. The Virginia Supreme Court of Appeals granted the lessor an injunction restraining the lessee from ceasing to operate the leased road on the ground that it was within the clear contemplation of the parties that the road should be operated for the entire term of the lease, even though there was no express promise on the part of the lessee to that effect.

The lessor transferred all of its property to the lessee for the *sole* purpose of enabling the lessee to operate the road. Thus the *actual operation* of the road was the main inducement and purpose of the contract so that the lessee was under an *affirmative duty* to run the road. There were also several undertakings by the lessee, which seemed to imply an agreement by the lessee to operate the road for the time specified. The finding of an implied promise by the court, therefore, only made explicit that which was implicit. Moreover, the court specifically stated that such an implied promise could only be found "when the language of the instrument leaves the meaning of the parties in doubt".

Paragraph 5 of S. P. O. No. 7, which was incorporated into and made a part of each of the three contracts in the instant case, flies in the very teeth of this principle. What could be more free from ambiguity than the clear statement that: "5. All bidders must agree to the rental period specified in the invitation for bids, *but the rate agreed upon shall apply to actual operating time only. Payment will be made only for such actual operating time,* as determined by the proper administrative officer." (Italics ours.)

Thus, under the above provision, if the equipment had actually been used for a few hours or days, Fogle could have recovered *only* for such limited use and no more. Yet by virtue of the total failure of the Government to use the equipment at all, Fogle now seeks to recover, as damages for such nonuse in Claim No. 1, the amount for which the Government would have been liable if it had used the equipment for the maximum time provided in the contract. This construction is so unreasonable that we must necessarily adopt the alternative view that, pursuant to the contracts, Fogle was to make the equipment *available for use* subject to the condition that the payment of rental fees would be made at the rate agreed upon in the contracts *only* for the actual operating time, *if* and *when* the equipment is used.

█ It is true that Fogle would thus assume the risk of furnishing equipment which might never be used; but contracts must be given effect in accordance with

their terms, and the rates of compensation and the conditions provided therein are conclusive upon the parties. Brawley v. United States, 1877, 96 U.S. 168, 24 L.Ed. 622; Simpson v. United States, 1898, 172 U.S. 372, 19 S.Ct. 222, 43 L.Ed. 482. As further proof that there could not have been any misunderstanding by Fogle concerning the terms of the contracts, the record reveals that counsel for Fogle on this appeal represented Fogle in obtaining the contracts and signed each of them as Treasurer of G. T. Fogle & Company.

■ Accordingly, the contracts gave the Government the *right* to use the equipment and to pay for it at the specified contract rate *when* and *to the extent* used. There was imposed on the Government no *duty* to use the equipment and the instant case is thus clearly distinguishable on its facts from Southern Ry. Co. v. Franklin, supra.

■ We feel that the three agreements between Fogle and the Government were nothing more than minor varieties of the familiar "requirements" contracts, where the only condition imposed upon a purchaser is that he act in good faith. In re United Cigar Stores of America, 2 Cir., 1934, 72 F.2d 673. If there is a bona fide failure by the buyer to have any requirements, he is not liable to the seller for a breach of contract, since his sole obligation was to pay at the contract rate *only* for goods actually required. See Marx v. American Malting Co., 6 Cir., 1909, 169 F. 582; National Publishing Co. v. International Paper Co., 2 Cir., 1920, 269 F. 903. Finally, there is no evidence in the record before us to show that the Government did not act in good faith in failing to use the equipment.

Although this result may seem harsh, at first blush, a contrary ruling in the instant case would be a legal solecism in that it would force the Government to pay for the use of something which it has not enjoyed, and for which it has not agreed to pay.

This case was tried below, and was briefed and argued before us, solely on the theory of the interpretation of the express written contract entered into between the parties. We discuss briefly, however, another theory under which a recovery might have been sought—the theory of implied contract. And we do this though normally we do not consider on appeal questions which have not been raised in the lower court.

From the record, it seems clear that two of the contracts here in question—Claim No. 2 as to the steam-shovel, and Claim No. 3 as to the second concrete mixer—were entered into under mutual mistakes of fact. As to the steam shovel, the mistake was that a shovel of the type specified in the contract could do this particular kind of work; as to the concrete mixer, the mistake was that the particular job on which this mixer was to be used had already been completed at the time the contract was executed by the parties.

■ Under these circumstances, it might be urged that Fogle could, under the theory of an implied contract, recover for the expenses incurred in good faith by it in carrying out its part of the contract. The law, however, makes a distinction, absolutely vital here, between contracts implied in fact and contracts implied by law. This distinction is thus aptly stated in 17 C.J.S., Contracts, § 4, p. 320, 321: *"Contract implied in law distinguished.* A distinction exists between contracts implied in fact and those which are implied in law. Thus, a contract implied in fact is a true contract, the agreement of the parties being inferred from the circumstances, while a contract implied in law is but a duty imposed by law and treated as a contract for the purposes of a remedy only. Another distinction between such classes of implied contracts lies in the fact that, * * * in the case of contracts implied in fact, there must be an assent of the parties, as in express contracts, whereas, * * * in the case of contracts implied in law, or more properly quasi or constructive contracts, such element of assent is lacking. The distinction has also been stated that a contract implied in fact is an implied contract in which the intention is ascertained and enforced, while a contract implied in law is a mere fiction, the intention being disregarded, and the quasi contractual obligation being imposed by law to bring about justice, without regard to the intention of the parties. Again, in the case of contracts implied in fact, the contract defines the duty, while in the case of constructive contracts, the duty defines the contract."

See also Williston on Contracts, Revised Ed. §§ 3, 1557.

■ In a long line of cases, it has been repeatedly held that there can be no recovery against the United States under the Tucker Act upon contracts implied by law:

Tempel v. United States, 248 U.S. 121, 39 S.Ct. 56, 63 L.Ed. 162; Sutton v. United States, 256 U.S. 575, 581, 41 S.Ct. 563, 65 L.Ed. 1099, 19 A.L.R. 403; Baltimore & Ohio Railroad Co. v. United States, 261 U.S. 592, 597, 43 S.Ct. 425, 67 L.Ed. 816; Merritt v. United States, 267 U.S. 338, 340, 341, 45 S.Ct. 278, 69 L.Ed. 643; United States v. Minnesota Mutual Investment Co., 271 U.S. 212, 46 S.Ct. 501, 70 L.Ed. 911; Goodyear Tire & Rubber Co. v. United States, 276 U.S. 287, 293, 48 S.Ct. 306, 72 L.Ed. 575. And see the opinion of District Judge Glenn, speaking for this Court, in Baltimore Mail Steamship Co. v. United States, 4 Cir., 76 F.2d 582.

And it seems quite obvious here, under the distinction just noted, that any implied contract must be a contract implied by law, which is without the ambit of the Tucker Act, and not a contract implied in fact, which is within the purview of the Tucker Act. Accordingly, the theory of implied contract would avail Fogle nought in the instant civil action.

For the reasons assigned, the judgment of the court below is affirmed.

Affirmed.