COURT OF APPEALS OF VIRGINIA


Present:    Judges Clements, Agee[*] and Felton
Argued at Richmond, Virginia


AUSTIN E. BRUMSKILL
                                                            MEMORANDUM OPINION[**] BY
v.        Record No. 1759-02-2                      JUDGE JEAN HARRISON CLEMENTS
                                                                    OCTOBER 21, 2003
MARY BRUMSKILL


FROM THE CIRCUIT COURT OF CUMBERLAND COUNTY
Richard S. Blanton, Judge

Michael J. Brickhill (Michael J. Brickhill, P.C., on brief), for
appellant.

George H. Edwards (George H. Edwards, J.D., P.C., on brief), for
appellee.


Austin E. Brumskill (husband) appeals the decisions of the trial court finding him in

contempt of court for failing to pay spousal support to Mary Brumskill (wife) and denying his

motion to modify the trial court's support order.  On appeal, husband contends both decisions

constitute error by the trial court because they reflect a construction of the parties' incorporated

property settlement agreement that does not comport with the plain language of the agreement

waiving the parties' respective rights to spousal support.  Finding no error in the trial court's

construction of the subject property settlement agreement, we affirm the judgment of the trial

court.

    [*] Justice Agee participated in the hearing and decision of this case prior to his investiture
as a Justice of the Supreme Court of Virginia.

    [**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I. BACKGROUND

On January 10, 1997, the trial court entered a final decree of divorce reserving the issues of spousal support, attorney's fees, and credit for mortgage payments made by husband during the separation. On February 11, 1998, the trial court heard evidence regarding wife's request for spousal support and attorney's fees and ruled from the bench that husband was required to pay wife $350 per month for permanent spousal support beginning March 1, 1998, and $5,000 for her attorney's fees in the divorce case.

The parties did not present an order to the trial court memorializing the court's February 11, 1998 ruling until August 20, 1998. In the interim, the parties negotiated a property settlement agreement dated April 26, 1998. The parties executed the property settlement agreement in May 1998.

The preamble of the property settlement agreement executed by the parties provides, in pertinent part, as follows:

> WHEREAS, the court has entered various orders in connection with the parties' divorce but the parties wish to resolve some of those matters by agreement; and,
>
> WHEREAS, the parties hereto intend that all terms of all court orders presently in effect that are not specifically changed or resolved herein shall continue in full force and effect, and
>
>   *      *      *      *      *      *      *
>
> WHEREAS, the parties hereto are desirous of settling all of their rights, interests, and obligations between them, and effecting a settlement between them of those matters now existing by reason

of their marriage heretofore solemnized and the orders of the court in their divorce proceeding . . . .

The first eight numbered paragraphs of the agreement then address the specific substantive issues of the settlement. Paragraph 1, entitled "Rental Property and Credits," describes how the proceeds of the sale of rental property are to be divided between the parties and concludes, "This will settle all sums due under the court orders for the sale of the rental real estate and for the items set forth therein as credits and charges." Paragraph 2, entitled "Marital Residence," addresses husband's purchase of wife's interest in the marital residence. Paragraph 3, entitled, "Credits relating to Marital Residence," describes how husband is to be credited for the mortgage payments and property taxes he paid following the parties' separation and concludes, "This will resolve all court orders related to these matters." Paragraph 4, entitled "Timeshare," addresses husband's retention of the timeshare property and concludes, "This will resolve all court orders relating to the Timeshare." Paragraph 5, entitled "Tangible personal property," explains how the parties' personal property is to be distributed and concludes, "This will resolve all court orders relating to the tangible personal property." Paragraph 5b, entitled "Intangible property," describes how certain shares of stock owned by the parties are to be distributed. Paragraph 6, entitled "Support Arrearages," provides, in pertinent part:

> Husband will pay wife the arrearage in spousal support of $350 per month for the months of March, April and May 1998 at the time of closing on the purchase of wife's interest in the marital residence . . . . This will resolve all matters relating to arrearages in spousal support through May 1998.

Paragraph 7, entitled "Attorney Fees," addresses husband's payment of the court-ordered attorney's fees of $5,000, provides that "neither party owes the other party's counsel any further attorney fees," and concludes, "This will resolve all matters relating to attorney fees due from one party to the other."

The succeeding eleven paragraphs of the property settlement agreement set forth certain acknowledgments by the parties and address fundamental contract issues—e.g., the severability of the provisions of the agreement, the revocation and modification of the agreement, the law governing the agreement, and the allowance for counterparts of the agreement. In paragraph 16, entitled "Advice of Counsel; Waiver," the parties acknowledge, *inter alia*, "that each has read and fully understands everything set forth in" the agreement. In paragraph 14, entitled "Release Clause," the parties acknowledge as follows:

> Except as otherwise provided by this Agreement, each party waives all rights he or she has in the property, income, and estate of the other, and each releases and forever discharges the other, his or her heirs, legal representatives, assigns, property and estate from all rights, claims, causes of action, demands, and obligations of any kind whatsoever, whether known or unknown, now or in the future, in law or in equity, which either of the parties ever had, may now have, or may have in the future against the other arising out of their marriage relationship, including, but not limited to, rights of support, alimony, maintenance, equitable distribution, homestead, family allowance, dower, curtesy, claims under the augmented estate provisions of the Virginia Code including any ELECTIVE SHARE in the augmented estate of the other party, any election regarding the estate of the other or to take against the Will of the other, widow's or widower's share, inheritance or distribution in the event of intestacy, right to act as personal representative of the other's estate, and all other similar and related rights under the laws of any state or territory of the United States and of any foreign country, as such laws exist or may hereafter be enacted or amended.

On August 20, 1998, the parties filed with the trial court a joint motion requesting that the parties' property settlement agreement "resolving the remaining issues of property" be incorporated by reference into the final decree of divorce. The parties also presented to the court a single composite order requiring husband to pay wife $350 per month in spousal support effective March 1, 1998, and $5,000 for her attorney's fees and incorporating by reference the parties' property settlement agreement into the final decree of divorce. The order, which was

endorsed without exception by counsel for both parties, further set forth the requisite notices under Code § 20-60.3.  The trial court entered the order on August 27, 1998.

On August 11, 1999, acting on wife's motions, the trial court reinstated the matter on the docket and issued a rule to show cause against husband for his failure to pay spousal support in compliance with the court's order of August 27, 1998.  Upon being served with the rule to show cause, husband filed a motion to modify the trial court's support order of August 27, 1998, to reflect wife's waiver of spousal support in the incorporated property settlement agreement.

At the show cause hearing on March 23, 2001, husband argued that paragraphs 6 and 14 of the property settlement agreement constituted a waiver by wife of all claims for spousal support.  Rejecting husband's argument, the trial court found husband in contempt of court for failing to pay wife spousal support in compliance with the court's order of August 27, 1998.  The trial court also established husband's arrearage at $5,600 and denied husband's motion to modify the support order.  The court entered an order memorializing its findings and rulings on June 10, 2002.

This appeal from that order followed.

## II.  ANALYSIS

The sole issue on appeal is whether the trial court was correct in finding the relevant language of the parties' incorporated property settlement agreement did not constitute a waiver by wife of the permanent spousal support mandated by the court's order of August 27, 1998.  If so, the court did not err in finding husband in contempt of court for failing to pay the court-ordered spousal support and in denying his request for modification of the August 27, 1998 order.  See White v. White, 257 Va. 139, 144,  509 S.E.2d 323, 325 (1999) ("Code § 20-109 inhibits the power of the court to award or consider modification of the decree to the extent that spousal support and maintenance are provided for in the incorporated agreement of the parties.").

Husband contends that, because paragraph 14 of the property settlement agreement contains a clear and unambiguous waiver by the parties of all rights to spousal support, the agreement should be construed as extinguishing his obligation to pay the court-ordered spousal support.  We disagree.

In cases such as this, "the intent of the parties as expressed in the agreement controls, and the agreement is treated as a contract and construed in the same manner as all contracts."  Id.  To ascertain the parties' intent,

> [t]he court must give effect to all of the language of a contract if its parts can be read together without conflict.  Where possible, meaning must be given to every clause.  The contract must be read as a single document.  Its meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties.

Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983).

"Where the agreement is plain and unambiguous in its terms, the rights of the parties are to be determined from the terms of the agreement and the court may not impose an obligation not found in the agreement itself."  Jones v. Jones, 19 Va. App. 265, 268-69, 450 S.E.2d 762, 764 (1994).  "[C]ourts will generally not infer covenants and promises which are not contained in the written provisions."  Pellegrin v. Pellegrin, 31 Va. App. 753, 759, 525 S.E.2d 611, 614 (2000).  However,

> "what is necessarily implied is as much a part of the instrument as if plainly expressed, and will be enforced as such.  If the language of the instrument leaves the meaning of the parties in doubt, the court will take into consideration the occasion which gave rise to it, the obvious design of the parties, and the object to be attained, as well as the language of the instrument itself, and give effect to that construction which will effectuate the real intent and meaning of the parties."

Id. (quoting Va. Ry. & Power Co. v. City of Richmond, 129 Va. 592, 611, 106 S.E. 529, 536 (1921) (citing Southern Ry. Co. v. Franklin Co., 96 Va. 693, 32 S.E. 485 (1899))).  Indeed,

> "courts are never shut out from the same light which the parties enjoyed when the contract was executed, and in that view they are entitled to place themselves in the same situation which the parties who made the contract occupied, so as to view the circumstances as they viewed them and so to judge of the meaning of the words and of the correct application of the language to the things described."

Id. at 760, 525 S.E.2d at 614 (quoting Talbott v. Richmond & Danville R.R. Co., 72 Va. (31 Gratt.) 685, 698 (1879)).

Here, the parties acknowledged in the preamble of their property settlement agreement that the trial court had "entered various orders in connection with the parties' divorce." The parties further indicated in the preamble that they intended that "all terms of all court orders" in effect when the agreement was executed that were "not *specifically* changed or resolved" in the agreement were to "continue in full force and effect." (Emphasis added.)

The record establishes that the trial court's February 11, 1998 ruling requiring husband to pay wife $350 per month for permanent spousal support beginning March 1, 1998, was in effect when the property settlement agreement was executed in May 1998. The order memorializing that ruling had not yet been entered, but as expressly indicated in the order of August 27, 1998, husband's obligation to pay the court-ordered spousal support became effective on March 1, 1998, and remained in effect "until the death of either party, the remarriage of [wife], or by Order of a Court of competent jurisdiction based on a substantial change in circumstances of the parties subsequent to the date of the entry of [the court's] Order," none of which had occurred when the property settlement agreement was executed.

Moreover, the parties acknowledged in the property settlement agreement itself that the court's rulings on February 11, 1998, were in effect when the agreement was executed. Paragraph 6 of the agreement requires husband to "pay wife the arrearage in spousal support of $350 per month for the months of March, April, and May." That arrearage existed only because

husband had failed to comply with the trial court's February 11, 1998 spousal support ruling. Paragraph 7 of the agreement addresses how the "court-ordered" attorney's fees of $5,000 were to be paid. Those fees were awarded by the court in its rulings of February 11, 1998. Hence, it is clear from the terms of the order of August 27, 1998, and the property settlement agreement that the parties intended that the trial court's spousal support ruling of February 11, 1998, would continue "in full force and effect" after the execution and incorporation of the agreement unless that ruling was "specifically changed or resolved" in the agreement.

Our review of the property settlement agreement convinces us that it does not "specifically change[] or resolve[]" the trial court's spousal support ruling. Unlike the issues involving the parties' rental property, marital residence, timeshare property, tangible and intangible personal property, support arrearages, and attorney's fees, the issue of continuing spousal support is not specifically addressed in the property settlement agreement.

Spousal support is referred to in paragraph 14 of the property settlement agreement. However, that paragraph, which constitutes a general mutual release clause under which each of the parties releases and discharges the other from all rights and claims, including spousal support, "[e]xcept as otherwise provided" in the agreement, clearly does not specifically address the trial court's spousal support order in effect when the agreement was executed.

Thus, in light of (1) the general nature of the release clause and its express admonition that it does not apply where "otherwise provided" by the agreement, (2) the specific language in the preamble that the parties "intend that all terms of all court orders presently in effect that are not specifically changed or resolved [in the agreement] shall continue in full force and effect," and (3) the fact that the agreement does not "specifically change[] or resolve[]" the court's spousal support ruling of February 11, 1998, which was in effect when the agreement was executed, we hold as a matter of law that it was not the intention of the parties to release husband

from his continuing obligation to pay wife spousal support as required by the trial court's February 11, 1998 ruling.  Cf. Bott v. N. Snellenburg & Co., 177 Va. 331, 339, 14 S.E.2d 372, 375 (1941) (applying the fundamental rule of contract construction that, where a general provision in a contract conflicts with a specific provision in the contract, the general provision must "give way" to the specific provision).

We conclude, therefore, that the trial court properly construed the property settlement agreement and, thus, did not err in finding husband in contempt of court and denying his motion to modify the support order.  Accordingly, we affirm the judgment of the trial court.

Affirmed.