# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## VIRGINIA RAILWAY AND POWER COMPANY V. CITY OF RICH-MOND.

### March 17, 1921.

1. STREET RAILWAYS—*Ordinance Permitting One Street Railway to Use Tracks of Another—Practical Construction of Ordinance by the Railways and the City.*—A street railway sought an ordinance permitting it to use a portion of the tracks of a competing line. After the passage of the ordinance the competing line · permitted the street railway, acting under the ordinance, to occupy a .portion of its lines, for the use of which the street railway agreed to pay in the manner provided for by the ordinance. The city also acquiesced in the conduct of the two companies.

   *Held:* That this practical construction put upon the ordinance by all parties in interest not only at the time of its adoption, but continued through a long series of years, both while the interests of the street railways were antagonistic and afterwards when they became harmonious, was entitled to great weight in the interpretation of the ordinance, even if it did not amount to an estoppel to deny that the ordinance authorized such action under it.

2. STREET RAILWAYS—*Ordinance Permitting One Street Railway to Use Tracks of Another—Construction of Ordinance of City of Richmond of December 7, 1900.*—A traction company sought an ordinance permitting it to use certain portions of a competing company's line, and accordingly an ordinance was adopted, the first section of which provided that the traction company should be authorized to operate its cars upon certain tracks of the competing company. Subsections of the ordinance then proceeded to designate specifically how the lines of the two companies were to be connected, specifying certain tracks which might be laid for this purpose. While these subsections of the ordinance did not in terms provide for the operation by the traction company of its cars over the tracks of the competing company, they were enacted to carry out the provisions of the first section which did authorize such operation, and such first section of the ordinance was not a mere permission to make track connections, but a grant of

the right to operate cars over the tracks of the competing company.

3. STREET RAILWAYS—*Franchise—Strict Construction—Rights of Public.*—While franchises are not to be created by implication and are to be strictly construed in favor of the public, and nothing taken by implication, this rule is for the preservation of the rights of the public, and is not to be invoked in favor of a public utility company seeking to discontinue a public service.

4. STREET RAILWAYS—*Franchise—Strict Construction.*—While a franchise is to be strictly construed in favor of the public, the grant is not therefore to receive a strained and unreasonable interpretation, contrary to its obvious intention. It must be fairly examined and considered, and reasonably and justly expounded.

5. STREET RAILWAYS — *Franchise — Construction — Implication.*— Where by, the terms of an ordinance permitting a traction company to use certain tracks of a competing line, the power to operate on the tracks was not expressly conferred in the subsections designating them, but was a necessary conclusion to be drawn from the ordinance read as a whole, the grant of the franchise and its terms are adequately expressed in the ordinance—what is necessarily implied is in effect expressed.

6. STREET RAILWAYS—*Ordinance Permitting Use of Tracks of Another Company—Discontinuance of Service.*—An ordinance permitting a traction company to use the tracks of a competing line contained a provision that the privileges granted should be exercised in accordance with the terms imposed upon the traction company by its franchise, and that it should run all its cars operating under the ordinance upon a certain schedule, and continuously between certain termini.

*Held:* That the acceptance of the ordinance created a contract to operate the cars, which the company could not revoke without the consent of the city, and which the city could enforce.

7. JUDICIAL NOTICE—*Street Railways—Necessity for Operation of Cars.*—Upon a writ of error involving the right of a street railway company to discontinue its service upon certain streets, the Supreme Court of Appeals cannot take judicial notice of the fact that after the abandonment of the service in question, there was abundant car service on such streets and that the continuation of the service would result in congestion and delay of traffic on an important street.

8. STREET RAILWAYS—*Abandonment of Service by Street Railway—Facts Justifying Abandonment.*—The facts that, after the discontinuance of a certain service by a street railway company, there was still an abundant car service on the street, and

75

that the continuation of the abandoned service would result in congestion and delay of traffic, while they might afford a strong reason for the release of the street railway by the city council from its obligation to continue the service, could not authorize the Supreme Court of Appeals to compel such release.

Error to a judgment of the Hustings Court of the city of Richmond imposing a fine on appellant for discontinuing service on one of its routes in the city of Richmond.

*Affirmed.*

## AN ORDINANCE

To authorize the Richmond Traction Company to extend its lines, and also to operate its cars upon certain tracks of the Richmond Passenger and Power Company. (Approved December 7, 1900.)

Whereas, in the ordinance entitled, "an ordinance to authorize the construction and operation of a street railway within the limits of the city of Richmond by the Richmond Traction Company," approved August 28, 1895, section 7, provides for the use, in whole or in part, of the lines of the Richmond Traction Company by any other company, when authorized by the city council, subject to the terms and conditions of said section.

Whereas, under an ordinance entitled, "an ordinance to authorize the construction and operation of a street railway within the limits of the city of Richmond by the Richmond Passenger and Power Company," approved December 23, 1899, it is provided that the said Richmond Passenger and Power Company shall have the right to operate its cars upon certain tracks on Broad street of the Richmond Traction Company, under the right reserved in the above-mentioned ordinance of August 28, 1895, and whereas, in the said ordinance of December 23, 1899, the council reserved the power to allow any other company, when authorized

by the council, to use, in whole or in part, the tracks of the Richmond Passenger and Power Company.

Now, therefore, be it ordained by the council of the city of Richmond:

First.—That the Richmond Traction Company be, and the same is hereby, authorized to operate its cars upon and along certain of the lines and tracks of the Richmond Passenger and Power Company, and to extend its own tracks at Eighth and Broad streets and Eighteenth and Broad streets, as hereinafter stated, subject to the conditions and provisions hereinafter set forth or referred to.

(a) The Richmond Traction Company is hereby authorized to connect its eastern track on First street with the southern track of the Richmond Passenger and Power Company on Main northern track of the Richmond Passenger and Power Company on Main street.

(b) To construct and operate a double track on Eighth street, between Broad and Main streets, connecting at the corner of Broad street with the tracks of the Richmond Traction Company west of Eighth street, and at the corner of Main and Eighth streets with the tracks of the Richmond Passenger and Power Company; the western track on Eighth street to connect with the southern track of the Richmond Passenger and Power Company, and the eastern track on Eighth street with the northern track of the Richmond Passenger and Power Company on Main street.

(c) And is also authorized to extend its tracks on Eighteenth street southwardly from Broad street to Main street, connecting the said extension at Eighteenth street and Broad street with the tracks of the Richmond Traction Company on Broad street east of Eighteenth street, and connecting the eastern track at Eighteenth street and Main street with the southern track of the Richmond Passenger

NOTE BY REPORTER.—In line four of paragraph (a) above, after the word "Main." the following should be inserted: "street, and to connect its western track on First street with the" (See pages 604 and 605.)

and Power Company on Main street, and the western track at Eighteenth and Main streets with the northern track of the Richmond Passenger and Power Company on Main street, with the right to the Richmond Passenger and Power Company to use said tracks on Eighteenth street, from Grace to Main streets, without paying any compensation to said Traction Company for the expenses of construction, and only to pay fair compensation for the use of the same, to be determined in the same manner as shall be determined the compensation it shall pay for the use of the tracks of the Richmond Traction Company on Broad street. But if the said Richmond Passenger and Power Company shall prefer to construct its own track from Eighteenth and Grace streets to Eighteenth and Main streets, then the said Richmond Traction Company shall not build or continue from Eighteenth and Grace to Eighteenth and Main streets one of the above-mentioned tracks running from Eighteenth and Broad streets, but may connect the said track at Eighteenth and Grace streets with the said track of the Richmond Passenger and Power Company at that point, and use the same upon compensation to the Richmond Passenger and Power Company, to be determined as provided in section 2 of this ordinance.

Second.—The use of the above-named tracks of the Richmond Passenger and Power Company by the Richmond Traction Company shall be upon such fair and reasonable terms as may be agreed upon between the parties, or, in the event that said companies cannot agree upon the terms, the same shall be settled by arbitration, as provided in section 11 of an ordinance approved December 23, 1899, entitled "an ordinance to authorize the construction and operation of a street railway within the limits of the city of Richmond by the Richmond Passenger and Power Company."

Third.—The privileges herein granted shall continue until the 1st day of January, 1926, unless sooner forfeited,

and shall be exercised in accordance with the terms and conditions imposed upon the Richmond Traction Company for the construction and operation of its lines, as provided in an ordinance approved August 28, 1895, entitled "an ordinance to authorize the construction and operation of a street railway within the limits of the city of Richmond by the Richmond Traction Company," and all lawful amendments thereto, so far as the same may be applicable and not inconsistent herewith. As to the furnishing of service, the committee on streets shall have the same power to require quicker service as it now has over the Broad street route of the Traction Company by section 3 of the ordinance of that company, approved August 28, 1895. It is further provided that before the Richmond Traction Company shall exercise any of the rights and privileges granted it by this ordinance, said Richmond Traction Company shall agree, in writing, evidenced by its acceptance of this ordinance, as hereinafter provided, that the city of Richmond shall have the right to put further conditions, restrictions and regulations as to the use of electricity and requirements as to the manner or system by which electricity may be used by the said Richmond Traction Company, upon any or all of its lines.

Fourth.—The said Richmond Traction Company shall run all of their cars, which operate by virtue of the powers herein granted, upon a schedule of not less than five minutes, under the provisions of their present franchise, and during the hours therein mentioned; and shall also run all of their cars, which operate by virtue of the powers herein granted, continuously from Oakwood to Hollywood and return, and continuously from the Reservoir to Chimborazo and return.

Fifth.—The privileges herein granted are given upon the condition that, by accepting this ordinance, the Richmond Traction Company shall concede and agree that its rolling stock shall be taxed by the city of Richmond, whether lo-

cated in the city or not; but if such rolling stock be also taxed by the county of Henrico, under the ruling of the board of public works, then the amount of the taxes imposed by the city shall be reduced by the amount which the company shall have to pay to said county.

Sixth.—The said Richmond Traction Company shall, within sixty days after said approval of this ordinance, accept, in writing, each and every provision of the same; and, if at the expiration of the said period of sixty days after said approval of this ordinance, the said Richmond Traction Company shall have failed so to accept, in writing, each and every provision thereof, then this ordinance shall be null and void and of no effect.

Seventh.—It is further provided that the privileges herein granted are given upon the condition that the work necessary to be done to make the connections herein authorized for the use of the tracks of the Richmond Passenger and Power Company from First and Main streets to Eighteenth and Main streets, and from Eighth and Main streets to Eighteenth and Main streets, and from the other work necessary for the operation of the cars of the Richmond Traction Company over said tracks, and the tracks to be constructed on Eighth street and on Eighteenth street shall be begun within four months from the passage of this ordinance, and shall be completed within six months from said passage.

Eighth.—This ordinance shall be in force from its passage.

The opinion states the case.

*E. R. Williams, A. B. Guigon* and *T. Justin Moore,* for the plaintiff in error.

*H. R. Pollard* and *George Wayne Anderson,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

The Virginia Railway and Power Company is the successor in title of the franchise of the street railways in the city of Richmond of the Richmond Traction Company, the Richmond Passenger and Power Company, and the Virginia Passenger and Power Company.  It was fined one hundred dollars for discontinuing service on one of its routes in the city without the consent of the city council, and to the judgment imposing such fine the writ of error in this cause was awarded.  The proceeding is *quasi* criminal, but in substance it is a civil proceeding to determine the rights and duties of the respective parties under certain ordinances of the city.  This involves a construction of said ordinances.

In 1900 there were two principal street car companies in the city operating under different franchises and occupying different territory.  Of these, the Richmond Traction Company, whose original franchise was granted in August, 1895, operated on Broad street practically its then entire length, extending from the city limits near Oakwood cemetery westward along Broad street to First street, and out First street and along that and other streets to Hollywood cemetery, but had no line on Main street.  This line was first known as the Oakwood to Hollywood line, afterwards as the Oakwood-Broad line, and all the cars were designated by the latter name as required by ordinance.  The operation of this line was commanded and compelled by the ordinance granting the franchise and the amendments thereof. The Richmond Passenger and Power Company, whose original franchise was granted in December, 1899, operated on Main street practically from one end of it to the other,

but had no line on Broad street, except the Laurel street line which ran on Broad street a distance of seventeen blocks. But the Traction Company's lines consisted chiefly of the Broad street lines, and the Passenger and Power Company's lines consisted chiefly of the Main street lines. In each of these franchises the city reserved the right to permit either company to run cars on the line of the other under certain terms and conditions.

Shortly before December 7, 1900, the Traction Company, which was a competitor of the Passenger and Power Co., made earnest efforts before the council of the city of Richmond, under the power which the council had reserved to itself, to secure authority to operate certain of its cars on Main street between First and Eighteenth over and along the tracks of the Passenger and Power Co.; the two lines then crossing each other at First and Main. In response to this earnest request, the city council adopted the ordinance of December 7, 1900, "To authorize the Richmond Traction Company to extend its lines, and also to operate its cars upon certain tracks of the Richmond Passenger and Power Company" (see title of ordinance) and it is the construction of this ordinance, in the light of the surrounding circumstances, which constitutes the chief matter in controversy between the parties.

Soon after the adoption of the ordinance, the two lines were connected where they crossed at First and Main streets, the line authorized by the ordinance was constructed along Eighteenth street and the two lines connected at Eighteenth and Main, and the Richmond Traction Company, with the acquiescence of the Richmond Passenger and Power Company, and of the city, began to operate a second line of cars between Oakwood cemetery and Hollywood cemetery, traversing Main street from First to Eighteenth, which became known as the "Oakwood and Main Line." The two lines were identical at each end, that

is from Eighteenth to Oakwood and from First to Holly-
wood, and were parallel from First to Eighteenth; one of
said parallel lines being on Broad and the other on Main.
The two companies continued to be competitors from
early fall in 1901 till June 1902, when the Virginia Pas-
senger and Power Company became the owner of the ma-
jority of the stock of both companies.   As stated in the
petition, "From June, 1902, until November, 1917, the
operation of the Oakwood and Broad and Oakwood and
Main lines continued under unified control.   Both lines
were always operated as Richmond Traction Company
lines—from June, 1902, to July, 1904 by the Virginia
Passenger and Power Company which owned the con-
trolling interest in both the companies; from July, 1904,
to July, 1909, by the receivers of the United States
District Court for the eastern district of Virginia in
charge of and operating the lines of all three companies
in receivership proceedings against said companies; and
from July, 1909, to November, 1917, by the present com-
pany, the Virginia Railway and Power Co., which acquired
the properties of all the foregoing companies through fore-
closure proceedings in the receivership suits against the
above mentioned companies."

By an ordinance adopted in 1915, the plaintiff in error,
then the owner and operator of all the lines aforesaid, was
authorized to make "a temporary change in the routing of
its  *  *  *  Broad and Main line and its Oakwood-Broad
line."   Under this ordinance the plaintiff in error was per-
mitted to, and did, divert its Oakwood-Broad line from
Broad street at Eighteenth street, and followed the latter
street to Main, and thence down Main to Ninth and up
Ninth to Broad.   This diversion made the two lines (Oak-
wood-Broad and Oakwood-Main) identical from Oakwood
cemetery to Hollywood except between Ninth and First
streets.   Both lines continued thereafter to be operated

76

along the streets indicated until November, 1917, when the plaintiff in error discontinued the Oakwood-Main line, without asking or obtaining the consent of the city. The plaintiff in error contends (1) that the ordinance of December 7, 1900, does not by its terms authorize or require the operation of the cars of the Traction Company on the Main street line of the Passenger and Power Co. between any specific points, and that such requirement cannot be made by implication; (2) that the right, if it exists at all, is merely permissive; and (3) that the intention of the ordinance of 1915 was to consolidate the two lines and not to duplicate the service over the route.

[1]     Aside from the language of the ordinance, to be presently noticed, the action of the parties affected was a contemporaneous practical construction of the ordinance by them.     The fact that the Passenger and Power Co., a competing line with the Traction Company, permitted the latter, acting under the ordinance, to occupy its lines along Main street from First to Eighteenth and share its business, and that the Traction Company agreed to pay for the use of said tracks in the manner provided by the franchises, plainly shows that both companies construed the ordinance as authorizing such use of said tracks.     The city also, by its full acquiescence in the conduct of the two companies, manifested a like interpretation of the ordinance, and, in view of the fact that the ordinance was adopted at the earnest solicitation of the Traction Company, and for the purpose of authorizing the very arrangement which was put into effect by the companies, it may well be doubted if the city would not be estopped to deny that interpretation of the ordinance.     In section 1242 of Dillon on Municipal Corporations (5th edition) it is said: "If a municipality has the power to grant such right or franchise, and a corporation believing and assuming that it has the consent or grant of the municipality, has, with the knowledge of the proper

municipal authorities, proceeded to exercise the right of franchise, and has constructed, maintained and operated its works and appliances in the city streets, the municipality will, in a proper case, be estopped by the acts and conduct of its officers and representatives in knowingly permitting and acquiescing in the use and occupation of the streets from asserting the invalidity of the grant of the franchise, so far, at least, as concerns its own failure to pass an ordinance or take the steps necessary to effectuate the grant. But the principle of estoppel in such case must be very cautiously applied and restricted to cases where justice manifestly requires its application."

Both routes have been operated by the plaintiff in error and its predecessors in title from the time the Oakwood-Main line was installed in 1901 till November 1917, when the latter was discontinued; subject to the change made in pursuance of the rerouting ordinance aforesaid of 1915. This practical construction put upon the ordinance by all parties in interest not only at the time of its adoption, but continued through a long series of years, both while the interests of the parties were antagonistic and afterwards when they had become harmonious, is certainly entitled to great weight, even if it does not amount to an estoppel. *Henry* v. *Mason City, etc. R. Co.,* 140 Ia. 201, 118 N. W. 310.

[2] Let us return now to the ordinance itself and see if it does not require as well as authorize the operation of the Oakwood-Main line. It must be borne in mind that the Traction Company was before the city council earnestly beseeching it for authority to operate certain of its cars over and along the tracks of the Passenger and Power Co., a competing company, on Main street between First and Eighteenth street, and that to accomplish this result it would be necessary to build a line along Eighteenth street from Broad to Main. In response to this request, and in-

tending to comply therewith, the city council adopted the ordinance of December 7, 1900, which is set out in full in the statement preceeding this opinion. Only such parts of it will be repeated as are deemed necessary, and italics will be used where desired for purposes of emphasis, though not used in the ordinance.

The title of the ordinance is as follows: "To authorize the Richmond Traction Company to extend its lines *and also to operate its cars upon certain tracks of the Richmond Passenger and Power Company.*"

Manifestly this title was sufficient to cover what was asked by the Traction Company and what the city proposed to grant it, to-wit: the right to operate its cars upon certain tracks of the Passenger and Power Co. The ordinance then contains two "Whereas" clauses. The first recites that the Traction Co. franchise *"provides for the use* of its tracks by any other company authorized by the council." The second recites that the franchise of the Passenger and Power Co. gave to the council *power to allow any other company to use its tracks.* After the recitals, the ordinance proceeds "Now Therefore Be It Ordained." That is to say, in consideration of the recitals and for the purpose of carrying out the object expressd in the title, the council ordained, First "That the Richmond Traction Co. be and the same is hereby authorized *to operate its cars upon and along certain lines and tracks of the Richmond Passenger and Power Co.*" This was an unqualified grant of authority of the Traction Company to operate its cars upon and along the tracks of the Passenger and Power Co. and it only remained to designate the tracks referred to. In order to accomplish this result the ordinance then adds sub-sections (a), (b) and (c) to section 1. Sub-sections (a) and (c) designate specifically how the lines of the two companies are to be connected. The two lines cross each other at First street and sub-section (a) provides that the connection at that

street shall be made by connecting the eastern track of the
Traction Company on First street, with the southern track
of the Passenger and Power Company on Main street, and to
connect its western track on First street with the northern
track of the Passenger and Power Company on Main street.
Sub-section (b) relates to the construction and operation of
a double track on Eighth street and the connections to be
made therefrom. Sub-section (c) provides for the construc-
tion of tracks on Eighteenth street from Broad to Main so
as to connect the two lines and provides that the connection
at Eighteenth and Main streets shall be made by connecting
the eastern track of the Traction Company with the south-
ern track of the Passenger and Power Co. and the western
track of the Traction Company with the northern track of
the Passenger and Power Company. The connection thus
authorized was absolutely necessary in view of the way
such cars are operated, for the operation of the Traction
cars on the tracks of the Passenger and Power Company,
and could not admit of any use of said tracks except those
on Main street between First and Eighteenth. It is true
as argued for the plaintiff in error, that neither one of
these sub-sections in terms provides for the *operation* by
the Traction Company of its cars over the lines of the Pas-
senger and Power Co., but the first paragraph of section 1
having provided for the operation of said cars, the sub-
sections referred to were enacted in order to carry out the
provisions of said first paragraph and simply provide how
the connections were to be made, which connections when
made would necessarily refer to the operation of the cars
on Main street between First and Eighteenth; the sub-sec-
tions, in effect, more particularly designating the certain
lines and tracks of the Passenger and Power Co. which were
to be traversed by the cars of the Traction Company. Sec-
tion 2 of the ordinance then declares that "The use of the
*above named tracks* shall be upon fair and reasonable

terms and if agreement is impossible, provides a method of compulsory arbitration." *"The above named tracks"* mentioned in section 2, could only refer to the tracks which had been designated as hereinbefore indicated in paragraph 1. Sub-sections (a) and (c) of paragraph 1 expressly state that these connections are the northern and southern tracks of the Passenger and Power Co. at First and Main and at Eighteenth and Main. Section 3 of the ordinance then provides that the privileges herein granted shall continue until the 1st of January, 1926. The plain purpose of the ordinance as admitted in the petition, was to give the Traction Company the right to use the tracks of the Passenger and Power Co. on Main street between First and Eighteenth, so that it would seem manifest that the "privileges herein granted" refer to the privileges which, as has been pointed out, were conferred by section 1. Section 3 also declares that the privileges herein granted *"shall be exercised* in accordance with the terms and conditions imposed upon the Traction Company for the *construction and operation* of its lines as provided in an ordinance approved August 28, 1895, and all lawful amendments thereto." Referring to the latter ordinance we find that it was there expressly provided that fair service should be rendered to the public upon the routes given the company and that the company between the hours of 6 A. M. and 12 P. M. *"shall not at any time within the said hours cease to do so without the consent of the council by ordinance."* That ordinance allowed and provided for a five minute schedule and that the company should run through cars from Hollywood to the eastern limits of the city. Not only did section 3 subject the Traction Company to the ordinance of 1895 and all lawful amendments thereto, but the ordinance of 1900 in section 4 expressly provides: "4th. The said Traction Company *shall run* all of their cars which operate by virtue of the powers herein granted, upon a schedule of not less than five

minutes *under the provisions of their present franchise* dur-
ing the hours herein mentioned; *and shall also run all of
their cars which operate by virtue of the powers herein
granted continuously from Oakwood to Hollywood and re-
turn."* The only cars that could be operated continuously
from Oakwood to Hollywood and return *under the ordinance
of* 1900 was the Oakwood and Main line, for the Oakwood
and Broad line was not operated by virtue of the power
granted by the ordinance of 1900, but under the ordinance
of 1896. The provisions of sections 3 and 4 are mandatory
and clearly establish the duty of the Traction Company to
operate such cars, just as the preceding section of the ordi-
nance gave them the right and privilege to do so. Reading
the ordinance as a whole it cannot be doubted that it was the
object and intention of the Traction Company, as well as of
the city, that the new line should be established between
Oakwood and Hollywood, which was in fact established, and
was called and known as the Oakwood-Main line. The
seventh section of the ordinance of 1900 declares: *"The
privileges herein granted* are given upon the condition that
the work necessary to be done to make the connection
herein authorized for the use of the tracks of the Richmond
Passenger and Power Co. from First and Main streets to
Eighteenth and Main streets  *  *  *  and the other work
necessary for the operation of the cars of the Richmond
Traction Company over said tracks  *  *  *  shall be begun
etc." This section in terms refer to the operation of the
Traction Company's cars over the tracks of the Passenger
and Power Co. along Main street from First to Eighteenth.
It expressly declares that the connections authorized *are for
the use of the tracks of the Passenger and Power Com-
pany on Main street from First to Eighteenth,* and in terms
provides *"for the operation of the cars of the Richmond
Traction Co. over said tracks."* The ordinance plainly gives
authority to the Traction Company to operate cars on Main

street between First and Eighteenth, and compels such operation on a schedule of five minutes continuously from Oakwood to Hollywood and return. This was the privilege sought by the Traction Company, and this was the privilege granted by the city and accepted by the Traction Company, and recognized by all the parties interested as the true and proper construction of the ordinance. It is admitted in the petition that "the council of the city of Richmond adopted the ordinance on December 7, 1900, evidently intended to grant to the Traction Company permision to operate certain of its cars on Main street along and over the tracks of the R. P. & P. Co. there stated." And again "perhaps and even probably the council of the city of Richmond did intend by the ordinance of December 7, 1900, to authorize the Traction Company to operate its cars on Main street between First and Eighteenth street over the R. P. & P. Co. tracks there stated." If the Traction Company was earnestly urging the council to grant it permission to operate its cars on the Main street line of the Passenger and Power Company, and the city did intend by the ordinance to grant their request, that is, to operate the cars on Main street, it would seem clear from what we have said, that section 1 of the ordinance of 1900 was not a mere permission to make track connections, but a grant of the right to operate its cars over the line of the Passenger and Power Company on Main street, on the terms and conditions therein set forth.

[3, 4] Notwithstanding the facts hereinbefore recited that the right of the Traction Co. to operate its cars on the Main street line of the Passenger and Power Co. from First to Eighteenth streets was earnestly sought of the city council by the Traction Co., that the ordinance of December 7, 1900, was enacted in compliance with that request, and that the plaintiff in error admits that the city council did probably intend thereby "to authorize the Richmond Traction

Co. to operate its cars on Main street between First and Eighteenth over Richmond Passenger and Power Company's tracks there situated," and that such operation of cars on Main street was put into operation soon after the adoption of such ordinance and was continuous from that time till the discontinuance in November, 1917, yet the plaintiff in error contends that it is not bound thereby because "such a franchise right cannot be created by *implication,* but must be granted *expressly.*" A number of cases are cited by counsel for the plaintiff in error to sustain the proposition that grants and franchises of this nature are to be strictly construed in favor of the public and that nothing is to be taken by implication. Among them are *Knoxville Water Co.* v. *Knoxville,* 200 U. S. 22, 34, 26 Sup. Ct. 224, 50 L. Ed. 353; *Blair* v. *Chicago,* 201 U. S. 400, 26 Sup. Ct. 427, 50 L. Ed. 801; and *Cleveland Electric R. Co.* v. *Cleveland,* 204 U. S. 116, 27 Sup. Ct. 202, 51 L. Ed. 399. We have no complaint to make of the doctrine enunciated in said cases, nor will it be necessary to further consider them. They were all cases in which the court was announcing the rule for the preservation of the rights in favor of the public, and which the plaintiff in error is now seeking to so apply as to destroy the rights of the public. The rule was adopted for the preservation of the rights of the public, and "serves to defeat any purpose, concealed by the skillful use of terms, to accomplish something not aparent on the face of the act, and thus sanctions only open dealing with legislative bodies" (*Slidell* v. *Grandjean,* 111 U. S. 412, 438, 4 Sup. Ct. 475, 487, 28 L. Ed. 321), or as put in another form, "it is a matter of common knowledge that grants of this character are usually prepared by those interested in them, and submitted to the legislatures with a view to obtain from such bodies the most liberal grant of privileges which they are willing to give. This is one among many reasons why they are to be strictly construed. *Blair* v. *Chicago,* 201 U. S.

77

400, 471, 26 Sup. Ct. 427, 50 L. Ed. 801, quoted with approval in *Cleveland Electric Ry. Co.* v. *Cleveland, supra.* But even for this purpose, the grant is not to receive "a strained and unreasonable interpretation contrary to the obvious intention of the grant. It must be fairly examined and considered, and reasonably and justly expounded." *Perrine* v. *Ches., etc. Canal,* 9 How. 172, 192, 13 L. Ed. 92. The rule and the manner of its application are well expressed in the following extract from the opinion of the court in *Blair* v. *Chicago, supra.*

"The rule was laid down with clearness by Chief Justice Taney in the often-cited case of *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420, and has been uniformly applied in many subsequent cases in this court. In *Perrine* v. *Chesapeake & Delaware Canal Company,* 9 How. 172, 192, the same eminent Chief Justice, speaking for the court, said: 'The rule of construction in cases of this description   *   *   *   is this, that any ambiguity in the terms of the grant must operate against the corporation and in favor of the public, and the corporation can claim nothing that is not clearly given by the law.  We do not mean to say that the charter is to receive a strained or unusual construction, contrary to the obvious intention of the grant. It must be fairly examined and considered, and reasonably and justly expounded.' In the case of *The Binghamton Bridge,* 3 Wall. 51, 75, it was said: 'The principle is this, that all rights which are asserted against the State must be clearly defined, and not raised by inference or presumption; and if the charter is silent about a power, it does not exist.   If, on a fair reading of the instrument, reasonable doubts arise as to the proper interpretation to be given to it those doubts are to be solved in favor of the State; and where it is susceptible of two meanings, the one restricting and the other extending the powers of the corporation, that

construction is to be adopted which works the least harm
to the State'."

[5]    But we have already pointed out that the terms
of the grant are adequately expressed in the ordinance. It
is true that sub-sections (a), (b) and (c) of section one
do not in express terms grant the power to *operate* cars
on the Main street line, but that is a necessary conclusion
to be drawn from the ordinance read as a whole.  It could
never have been intended by the courts to hold that, when
the rights of the parties to a contract clearly appeared
from the contract itself, those rights were not expressed in
the contract.    What is necessarily implied is in effect ex-
pressed and that is all that is required.

In *Southern Ry. Co.* v. *Franklin Co.* 96 Va. 693, 32 S. E.
485, 44 L. R. A. 297, there was a lease of a railroad, which
contained no express agreement to operate it during the
term of the lease. The lessee was proposing to abandon it but
was enjoined from doing so.  This court held, as succinctly
stated in the syllabus, that "although courts are careful
in inferring covenants and promises not contained in writ-
ten contracts, yet what is necessarily implied is as much a
part of the instrument as if plainly expressed, and will be
enforced as such.  If the language of the instrument leaves
the meaning of the parties in doubt, the court will take into
consideration the occasion which gave rise to it, the obvious
design of the parties, and the object to be attained, as well
as the language of the instrument itself, and give effect to
that construction which will effectuate the real intent and
meaning of the parties.  *  *  *

"A necessary inference from a written contract of an ob-
ligation to do what the parties actually intended, and what
is essential to give effect and validity to it, is not an addi-
tion to the contract."

[6]    We are of opinion that the grant of the franchise
and its terms are adequately expressed in the ordinance of
December 7, 1900.

The next contention of the plaintiff in error is that the grant contained in ordinance of 1900 to operate cars on Main street was merely "permissive and was in the nature of a privilege, license or permit, given to meet the competitive conditions then existing between the two companies, but whcih has not prevailed since June, 1902, and no corresponding obligation was imposed on the Richmond Traction Company to exercise it." This contention seems to overlook the provision of section 3 of the ordinance which provides that "the privileges herein granted  *  *  *  *shall be exercised* in accordance with the terms and conditions imposed upon the Richmond Traction Company for the construction *and operation* of its lines as provided in an ordinance," etc. and of section 4 which provides, *"shall run all their cars which operate* by virtue of the powers herein granted upon a schedule of not less than five minutes  *  *  *  *and shall also run* all of their cars *which operate* by virtue of the powers herein granted *continuously from Oakwood to Hollywood and return."*

It is admitted in the petition that "under the provisions of sections three and four, it may well be that if, and so long as, the Oakwood and Main line of cars was operated by the Richmond Traction Company and its successors, including the defendant, the said cars had to be operated in accordance with the terms and conditions of said ordinance."

The acceptance of the ordinance created a contract to operate the cars, which the company could not revoke without the consent of the city, and which the city could enforce.   Compare *Southern R. Co.* v. *Franklin, supra; State* v. *Spokane St. Ry. Co.*, 19 Wash, 518, 53 Pac. 719, 41 L. R. A. 515, 67 Am. St. Rep. 739.

In *State* v. *Bridgeton, etc. Trac. Co.*, 62 N. J. L. 592, 600, 43 Atl. 715, 718, 45 L. R. A. 837, 841, it is said:

"It became the duty of the respondent company to operate the railway over its entire route under the franchise as acquired by it. .* * * It was its duty to construct, maintain and operate a railway on the surface of the street to carry passengers and demand tolls. * * * That a portion is unprofitable, or that a portion is more difficult to operate, are not valid reasons for abandonment. Its application to the city was for the location of its tracks over the whole route. The terms and conditions of the ordinance, and the ordinance passed on the faith of the duty of the company to operate its road over the entire route located * * * It appears clear from the statute and the ordinance, that it is the duty of such companies, organized under the statutes, to operate the roads mentioned in its certificate of incorporation for the benefit of the public in consideration that it shall have the franchise of transporting the passengers and taking the tolls from them, and that it cannot escape the performance of this duty as a public agent."

[7, 8] Finally, it is claimed by the plaintiff in error—
"(3) That by the ordinance of March 11, 1915, rerouting the cars on these routes, the Oakwood and Broad line was brought down on Main street between Eighteenth and Eighth streets, and there was thus a consolidation of the Oakwood and Broad and the former Oakwood and Main lines and the clear intention of the council was that the line should be so consolidated and not duplicated, since the only effect of the duplication would be to require the operation of the cars from one end of the city to the other, in order to serve a short distance of eight blocks, where there was now an abundant car service, and this would result in congestion and delay to traffic on one of the most important streets in the city."

It does not appear from the facts agreed, which is the only evidence before us, that there is now an abundant car service on Main street between First and Eighth, nor that

the continuation of the Oakwood and Main line will "result in congestion and delay to traffic on one of the most important streets in the city," and even if such be the facts, we cannot take judicial notice of them. If the facts be as stated, it would furnish a strong argument to the city council to induce it to release the plaintiff in error from its obligation to continue the service, but could not authorize this court to compel such release.

Upon the whole case, we are of opinion to affirm the judgment of the hustings court.

*Affirmed.*