# Richmond

## CITY OF RICHMOND v. CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF VIRGINIA.

March 8, 1965.

Record No. 5963.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, l'Anson and Carrico, JJ.

*James A. Eichner, Assistant City Attorney (J. E. Drinard, City Attorney, on brief), for the plaintiff in error.*

*Lewis T. Booker (Joseph E. Blackburn; Hunton, Williams, Gay, Powell & Gibson, on brief), for the defendant in error.*

I'ANSON, J., delivered the opinion of the court.

■ The City of Richmond instituted this action against The Chesapeake and Potomac Telephone Company of Virginia, hereinafter called "the company," to recover $128,422.64, plus interest, which it alleged accrued under the terms of a thirty-year franchise granted by the city to the company on May 12, 1932, to engage in the business of providing local telephone exchange service in the city of Richmond, Virginia. In its grounds of defense the company asserted that: (1) it had paid in full all of the amounts due under the franchise; and (2) if liable for additional franchise fee payments, it was entitled to recoupment against the city up to the amount of the rental fees erroneously exacted by the city for poles, wires or conduits owned or used by it on city property, which it was exempt from paying under the provision of § 5 of the franchise.

A jury trial was waived and the trial judge, after hearing evidence and argument of counsel, held that the city was entitled to recover the amount sued for, but that the company was entitled to recoup from the city the amount the city was entitled to recover from the company, and final judgment was entered for the company. To review the judgment, we granted the city a writ of error and the company assigned cross error.

The questions presented are:

(1) Was the city entitled to recover franchise fees accruing from January 1, 1962, to May 12, 1962?

(2) Did the city erroneously assess and collect from the company fees for poles and wires or conduits owned or used by the company on city property?

(3) Was the remedy of common law recoupment available to the company in this action?

(4) Was the company's claim barred by the statute of limitations?

The company has engaged in the telephone business in the city of Richmond "since at least 1913" under three different franchises. It is now operating under a thirty-year franchise ordinance adopted on June 11, 1962, and commencing May 11, 1962. It first began its operations in the city as assignee and successor to the rights of the Southern Bell Telephone and Telegraph Company under a franchise granted by an ordinance in 1901 for a term of thirty years, commencing on October 15, 1901.

Section 8 of the 1901 franchise provided that the company "pay to the City of Richmond, semi-annually, on the first day of January and on the first day of July, three per centum of the gross receipts of such local telephone services * * *."

While operating as successor to Southern Bell under the 1901 franchise the company paid the city three per cent of its gross receipts from local telephone service in accordance with § 8 of the franchise. After the expiration of the franchise in October, 1931, the company continued its operations without a franchise until May 12, 1932, when, by ordinance, the city granted the company a new thirty-year franchise, expiring on May 12, 1962, which was accepted by the company by a sealed instrument dated May 24, 1932.

In January, 1932, the company paid the city three per cent of its gross receipts covering the period from July 1 to December 31, 1931, and in July, 1932, it made another payment to the city for the period January 1 through June 30, 1932.

Section 5 of the May 12, 1932, franchise provides:

"The said grantee [the company] binds itself by the acceptance of this ordinance that its use of the streets, alleys and public places in the City of Richmond shall be subject to and in accordance with the applicable provisions not inconsistent herewith, of chapter 45 of the Richmond City Code of 1924, entitled 'Concerning Wires, Poles, Conduits, etc., in, over and under the Streets of the City,' as the same exists at the time of the final passage of this ordinance or may hereafter be amended *except in so far as the same relates to compensation for the use of the streets, alleys and other public places of the City, which compensation is hereafter provided for * * *."* (Emphasis added.)

Section 8 of the 1932 franchise was quite similar to § 8 of the

1901 franchise except that the hereinafter italicized language was added. It reads as follows:

"*Throughout the life of this franchise*, the grantee shall pay to the City of Richmond, semi-annually, in January and July, three per centum of its gross receipts from local telephone exchange service within the city; but this does not exempt the said grantee, its successors and/or assigns, from any license or other tax or assessment that may be levied by the City of Richmond * * *." (Emphasis added.)

Chapter 45 of the Richmond city code of 1924, referred to in § 5 of the 1932 franchise, provides in part:

"§ 9. Annually, between the first day of January and the 20th day of January, all persons or corporations shall pay to the city collector a fee of two dollars for each and every telegraph, telephone, electric light or other pole used * * *."

\* \* \* \* \*

"§ 31. Each person or corporation shall, on the fifteenth day of June and January of each year, pay to the city collector a sum equal to $5.00 per wire per mile then owned or used by such person or corporation * * *."

Pursuant to §§ 9 and 31 of chapter 45 of the Richmond city code of 1924, subsequently amended several times, the city assessed and collected from the company $854,608 in fees as rental for poles, wires and conduits during the life of the 1932 ordinance.

Defendant's last payment to the city for franchise fees under the 1932 franchise, which expired on May 12, 1962, was made in January, 1962, covering the period from July 1 through December 31, 1961.

The company says that the language of § 8 of the franchise is clear and unambiguous, and that since the 1932 franchise was not in existence in July, 1962, there was no duty upon it to make a payment then, because payments were to be made only during each January and July which fell between May 12, 1932, and May 12, 1962, the life of the franchise. Thus it argues that since its first payment under the franchise of May, 1932, was made in July, 1932, and the last of sixty semi-annual payments was made in January, 1962, it has fully paid all fees required throughout the life of the franchise, and the trial court erred in holding that it owed the city franchise fees for the period from January, 1962, to May 12 of that year.

On the other hand, the city says that the trial court correctly determined that the company is indebted to it, under the plain and

clear terms of § 8 of the franchise, for three per cent of its gross receipts for the period from January 1 to May 12, 1962, plus interest, because the franchise did not expire until May 12, 1962, and the company was obligated to pay the fees throughout the life of the franchise.

We agree with the company that § 8 of the 1932 franchise is unambiguous, but we do not agree with its interpretation and conclusion that it has fully paid the franchise fees incurred "Throughout the life of the franchise." "Throughout" is defined in Webster's Unabridged Dictionary, 3rd ed., p. 2385, as "from beginning to end." The provision that the payments be made in January and July merely fixed a time when payments accruing under the franchise were to be made, and the three per cent gross receipts fee is to be applied from the beginning date of the franchise through its termination date. To give any other meaning to the language of this section would be giving effect to an unreasonable and strained interpretation, contrary to the obvious intention of the grant.

But, even if the language of § 8 of the franchise were ambiguous, under the well established rule of construction the language of a franchise must be taken most strongly against the grantee. *Va. Ry. & Power Co.* v. *Richmond*, 129 Va. 592, 609-611, 106 S. E. 529, 536; *Roanoke Ry. & Electric Co.* v. *Brown*, 155 Va. 259, 282, 154 S. E. 526, 534; 23 Am. Jur., Franchises, § 16, pp. 725-727; 37 C. J. S., Franchises, § 21(b), pp. 167, 168.

Uninterrupted payments made by the company after the 1901 franchise expired also support our conclusion that the company is indebted to the city for franchise fees accruing during the period from January 1 to May 12, 1962. When the 1901 franchise expired in October, 1931, the company continued to operate under an implied contract, which was cancelable upon reasonable notice, under the same terms and conditions as the franchise ordinance. See *Commonwealth* v. *Portsmouth Gas Co.*, 132 Va. 480, 492, 112 S. E. 792, 795; *City of Roswell* v. *Mountain States Tel. & Tel. Co.*, 78 F. 2d 379, 386; *Denver* v. *Denver Union Water Co.*, 246 U. S. 178, 38 S. Ct. 278, 62 L. ed. 649; *Elizabeth City Water & Power Co.* v. *Elizabeth City*, 188 N. C. 278, 124 S. E. 611. Hence the payment made by the company in January 1932, was obviously intended to cover the period from July through December, 1931, a part of which time it operated under the 1901 franchise, and the two and one-half months it operated under an implied agreement. Again in July, 1932,

the company paid three per cent of its gross receipts for January through June of 1932, which was for January through May 11, 1932, while operating under an implied contract, and from May 12 through June 30, 1932, under the 1932 franchise.

For the reasons stated, we hold that the city is entitled to recover from the company the sum of $128,422.64, plus interest from August 1, 1962, for franchise fees due for the period January 1 to May 12, 1962.

The next question presented is whether the company was exempt under § 5 of the 1932 franchise from the payment of fees for poles, wires or conduits in, over and under the streets of the city.

Under § 5 of the 1932 franchise the company agreed that its use of public streets, alleys and public places of the city of Richmond shall be subject to "the applicable provisions not inconsistent herewith, of chapter 45 of the Richmond City Code of 1924" and any subsequent amendments, *except in so far as the same relates to compensation for the use of the streets, alleys, and other public places of the City, which compensation is hereafter provided for.*"

The compensation "hereafter provided for" is found in § 8 of the 1932 ordinance, requiring the payment of three per cent of the gross receipts from local telephone exchange service within the city.

In the city's answer to the company's grounds of defense, it stated that the payments of pole and wire fees provided for in chapter 45 of its code, as amended, "may be characterized as compensation in the nature of rental for the use of streets, [and] they were intended to defray expenses incurred by * * * [the city] in supervising the installation and maintenance of the poles and wires in and use of the streets by * * * [the company] in the conduct of its business, to secure the safety of persons using the streets and their property." This concession on the part of the city is in accord with the generally accepted view that such pole, wire and conduit fees are not taxes but are in the nature of compensation for rental, and therefore purely contractual in nature. See *Postal Telegraph-Cable Co.* v. *City of Richmond,* 249 U. S. 252, 258, 259, 39 S. Ct. 265, 63 L. ed. 590; 64 C. J. S., Municipal Corporations, § 1737, pp. 160, 161.

The 1932 franchise ordinance is a contract between the company and the city setting forth the terms and conditions under which the company will use and occupy the city's streets, alleys and public

places in and about its business of furnishing telephone service. Section 5 of the franchise clearly and expressly provides that the company is exempt from paying compensation for the use of streets, alleys and other public places of the city except the three per cent on its gross receipts provided for under § 8 of the franchise contract. Thus the payments made by the company to the city for pole, wire and conduit fees were erroneously and wrongfully exacted by the city.

Moreover, it should be noted that § 5, which exempted the company from such additional payments for use of streets under chapter 45 of the city code is unique in the 1932 franchise. It is not to be found in either the preceding or subsequent franchise ordinances. Therefore, we can presume that it was inserted in the 1932 franchise for the express purpose of exempting the company from the payment of rental fees to the city for poles, wires and conduits on its streets other than the fees of three per cent of its gross receipts provided for in § 8 of the franchise.

The city says that the common law defense of recoupment is not available to the company because some of the necessary elements for such a plea are not present.

We cannot agree with the city's contention. All the elements necessary to support common law recoupment are present here.

The elements of common law recoupment in Virginia are set out in Burks Pleading and Practice, 4th ed., § 249, p. 447. Recoupment must arise out of the same transaction; the amount need not be liquidated; there can be no recovery over; the right to recoupment must be shown by a plea in the general issue, or *nil debet*, or *non assumpsit;* it cannot be used against a sealed instrument; and purely equitable defenses cannot be set up. See also *Dexter-Portland Co. v. Acme Co.*, 147 Va. 758, 766, 133 S. E. 788, 790. Cf., Statutory Recoupment, § 8-241, Code of 1950, 1957 Repl. Vol.

The recoupment arose out of the same franchise contract sued upon by the city. The city sued for franchise fees due and owing, pursuant to § 8 of the 1932 franchise, whereas the company pleaded recoupment for rental fees paid for which it was exempt under § 5 of the franchise.

While the amount wrongfully exacted from the company by the city exceeds the amount of the company's liability to the city for franchise fees, it does not seek a recovery over. The company only sought to be relieved of the payment of the additional franchise fees in the event the court determined it had not fully paid the fees provided for under the franchise.

In its grounds of defense the company pleaded that it was not indebted to the city, and if it was the city had wrongfully and erroneously required it to pay the sum of $854,608. Thus the defense of recoupment was properly pleaded.

The company accepted the 1932 ordinance by an instrument to which its corporate seal was affixed, but the franchise ordinance was not under seal. Recognition of an unsealed instrument by a sealed instrument does not confer on the former the character of an instrument under seal. *Crouse* v. *McKee*, 14 N. Y. St. Rep. 158; 79 C. J. S., Seals, § 2, 476, 477.

The city contends that most of the company's claim is barred by the statute of limitations.

*Charlottesville* v. *Marks' Shows*, 179 Va. 321, 18 S. E. 2d 890, relied upon by the city, has no application here. There an action was brought to recover taxes illegally levied and voluntarily paid. The defense of recoupment was not involved.

A defense of recoupment is not barred by the statute of limitations so long as the main action out of which the claim arose is timely. *Bull* v. *United States*, 295 U. S. 247, 262, 55 S. Ct. 695, 79 L. ed. 1421; *Pennsylvania R. Co.* v. *Miller*, 124 F. 2d 160, 140 A. L. R. 811, 814; *National Cash Register Co.* v. *Joseph*, 299 N. Y. 200, 86 N. E. 2d 561, 562 (1949). Here the city's action was timely and no part of the company's claim was barred by the statute of limitations.

Since the company is entitled to recoup in this case a greater sum than it owes to the city for unpaid franchise fees, and under a plea of common law recoupment there can be no recovery over, nor did the company seek any, neither party is entitled to recover any amount from the other. Accordingly, the judgment of the court below is

*Affirmed.*