## CIRCUIT COURT OF THE CITY OF RICHMOND

K. A. O'Connor

v.

Steve Patsalis

August 8, 1975

Case No. 7742

By JUDGE ALEX H. SANDS, JR.

The evidence introduced in this case being in conflict on several material points, it is incumbent upon the Court to determine findings of fact which the Court finds to be supported by a preponderance of the evidence before considering the legal questions presented.

Defendant, for a number of years, had been engaged in the business of operating inns which dispensed food and beverages, and plaintiff, for almost a half century, had been engaged in the business of leasing vending machines and juke boxes to business concerns of a type similar to those operated by defendant.

Quite frequently plaintiff would lend money to patrons with which to improve their business premises or for other business purposes in return for which the patron would display and utilize plaintiff's products in the conduct of such patron's business. So frequently did plaintiff engage in this practice that he had an arrangement with a Norfolk Savings & Loan Association (Mutual Savings & Loan Co.) to routinely discount the paper on these loans,

and kept in his office a supply of the loan company's stock form blank notes for this purpose.

Plaintiff, on at least four prior occasions, had loaned money to defendant under such an arrangement.

On September 2, 1970, defendant needed money to pay off several personal debts, including a tuition payment on his daughter's college education, and approached plaintiff for a loan of $2,500.00 for this purpose. It is clear from the evidence that defendant was negotiating for a personal loan. It is equally as clear that plaintiff was dealing upon a basis which he considered to be a business loan. The transaction is held to be of a personal nature.

Plaintiff drew and delivered to defendant his personal check for $2,500.00 and had defendant execute, in blank, one of the blank note forms of Mutual Savings & Loan Company. This note was subsequently filled in by plaintiff for the face amount of $2,976.20, payable in 24 monthly installments of $124.00 and a final installment of $124.20. The note was then promptly discounted by plaintiff with Mutual.

The note had nothing upon its face to indicate what portion of the $2,976.20 was for carrying charge, interest or other item. It did, however, on its face, provide that in event of default, plaintiff would pay 15% attorney's fee and in addition, "costs and ten per cent fines, as provided by statutes and by-laws of this Company. . . ."

Defendant made one payment of $100.00 to plaintiff and then defaulted, necessitating plaintiff's paying out the entire note, which he promptly did.

This is an appeal from a judgment of the General District Court in favor of the plaintiff. The defendant, while admitting owing plaintiff the $2,500.00 originally borrowed less the $100.00 payment made thereon, contends that plaintiff is in violation of the "Truth in Lending Act" (15 U.S.C.A. § 1601, et seq.) and seeks, by way of recoupment against the amount sued for, to set up such damages as to which he might be entitled pursuant to 15 U.S.C.A. § 1640(a)(1).

Plaintiff, on the other hand, contends (1) that the statute of limitations set forth in 15 U.S.C.A. Section 1640(e) bars defendant from setting up an alleged breach of truth in lending statutes, and (2) that the alleged violation of truth in lending must be raised by

counterclaim and cannot be set up by way of recoupment, and, finally, (3) that defendant has proven no damages under 15 U.S.C.A. § 1640(a)(1).

The defense of the statute of limitations is foreclosed by *Richmond v. Telephone Co.*, 205 Va. 919 (1965), where is stated:

> A defense of recoupment is not barred by the statute of limitations so long as the main action out of which the claim arose is timely.

Plaintiff's contention that defendant's claim of violation of truth in lending must be raised by counterclaim appears to be based upon plaintiff's belief that the provisions of 15 U.S.C.A. § 1640 are of a strictly *punitive* nature and that this is the sole purpose of this section. The authorities appear to be in complete accord that the act as a whole is remedial and not punitive, yet Section 1640 has several aspects which would indicate that this section is not *wholly* remedial. *See Eby v. Reb Realty, Inc.*, 495 F.2d 646 (9th Cir. 1974). The overall purpose of the act being, however, remedial and to be liberally construed (*N. C. Freed Co. v. Board of Governors*, 473 F.2d 1210 (2d Cir. 1973)), that portion of § 1640 under which defendant is proceeding (1640(a)(1)) would not under any circumstances be considered as punitive.

The gravamen of plaintiff's contention is that defendant has proved no damages under § 1640(a)(1). This position seems to be based (a) upon the concept that a showing by defendant that he engaged in "comparative credit shopping" is a condition precedent to establishing a right to damages under § 1640(a)(1), and (b) that he has proved no actual damages.

As to concept (a), the language of the act on this point is permissive throughout. The prospective borrower must be given the *opportunity* to "credit shop" before he signs up if he cares so to do. Indeed, if given the required credit picture, he might well elect to not credit shop at all but to give up the entire idea and not go through with a loan at all. The purpose of the act is to guarantee that the borrower shall know, before he commits himself to the legal obligation of repayment, the exact financial burden which he is about to assume. It may very well be that had defendant been advised that

the procurement of the $2,500.00 loan was going to cost him at the minimum $476.20 with the possibility that it would cost him nearly $1,000.00 should conditions force him to default upon one payment, he might very well indeed have decided that the "game was not worth the candle."

As to proof of damages, he says that his understanding was that the $2,500.00 would be repaid plaintiff from his, defendant's, share of the earnings from the operation of the machines. No interest was discussed, and he says that he understood that he was to pay none, that the inducement for plaintiff making the loan was to get his, plaintiff's, machines on the defendant's premises. The fact that the business may never have gotten off the ground, is of no moment.

Defendant's proven damages, therefore, would be the difference between $2,500.00 and $2,976.20, or $476.20, which when allowed as a recoupment against the $2,976.20 leaves a balance of $2,500.00 owing plaintiff, subject to the $100 payment with which defendant must be credited. Should it be contended that he owed any attorney fees, by virtue of the 15% provision in the note, this would be included in defendant's damages suffered so that the end result would be the same.

As indicated at the trial, the Court finding defendant's answers to requests for admission to have been evasive, a counsel fee of $50.00 will be allowed plaintiff's counsel against defendant for an appearance necessitated thereby.

Judgment will, accordingly, be for plaintiff in the amount of $2,400.00.